Isadore BLAU, a stockholder of Warner Bros. Pictures, Inc., suing on behalf of himself and all other stockholders similarly situated and on behalf of and in the right of Warner Bros. Pictures, Inc., Plaintiff,

v.

Charles ALLEN, Jr., Albert Warner, Jack L. Warner and Warner Bros. Pictures, Inc., Defendants.

United States District Court
S. D. New York.
July 2, 1958.

Morris J. Levy, New York City, for plaintiff.

Sullivan & Cromwell, New York City, for defendants Albert Warner and Jack L. Warner. Howard T. Milman and Jerome K. Walsh, Jr., New York City, of counsel.

Holtzmann, Wise & Shepard, New York City, for defendant Charles Allen, Jr., Edmund H. H. Caddy, New York City, of counsel.

McGOHEY, District Judge.

The plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The action is a stockholders derivative suit under the provisions of section 16(b) of the Securities Exchange Act of 1934.[1]

On argument all the defendants, agreeing there were no issues of fact, asked for summary judgment in their favor.

The plaintiff's motion will be granted as to the defendant Charles Allen, Jr. but denied as to the remaining defendants. As will appear, there are issues of fact with respect to the latter which require a trial.

The complaint alleged that certain directors of Warner Bros. Pictures, Inc., namely, Charles Allen, Jr., Albert Warner and Jack L. Warner, engaged in "short swing" transactions in the corporation's stock and that all profits realized therefrom must be paid to the corporation; and that the corporation has refused to institute action after due demand.

The facts involving the defendant Charles Allen, Jr. are not disputed. He was at all material times a general partner in the firm of Allen & Company, having a 38.5% partnership interest. On July 10, 1956, Allen & Company purchased 150,000 shares of the common stock of Warner Bros. Pictures, Inc. at 25 dollars per share. On the following day, July 11, 1956, Charles Allen, Jr. became a director of Warner Bros. Pictures, Inc. On September 13, 1956, in

---

1. 15 U.S.C.A. § 78p(b).

response to an invitation, he tendered to that corporation 5,750 shares of its stock at $27.50 per share. The plaintiff now demands that Allen pay to the corporation the sum of $14,127.72 which represents a difference of $2.50 per share on 5,750 shares less expenses.

Allen contends (1) that the shares tendered to the corporation on September 13 were not part of those purchased by Allen & Company on July 10 but were separate and distinct shares purchased by him and/or members of his family prior to January 1, 1956; (2) that a tender of shares made in response to the corporation's invitation is not a sale within the meaning of section 16(b) and (3) he is not liable for any profit realized since he was not a director of Warner Bros. at the time of the purchase by Allen & Company.

■■■ As to the first point, there is no requirement that the shares purchased be the identical ones sold.[2] To hold otherwise would permit easy avoidance of the statute.

■■■ Allen cites no rule or ruling in support of his second objection. He takes the position, however, that it may be assumed that the corporation was acting for its own benefit in inviting tenders and it would be against the interest of the corporation and therefore contrary to legislative intent to bring such a transaction under section 16(b). It is difficult to see how the corporation would be injured in the present situation for the statute does not prohibit such transactions but merely states that all profits realized shall inure to and be recoverable by the corporation. In any event, since an option to purchase stock extended by a corporation has been included under the statute,[3] invitations to tender must logically be included also.

■■■ Defendant's third point appears to be a novel one. There is no express requirement in the statute that a director be such both at the time of purchase and of sale to bring his dealings under section 16(b). However, as the decision in Stella v. Graham-Paige Motors Corporation[4] makes clear, a purchaser of stock need not have access to inside information in entering into his initial transaction. Having become an insider by virtue of becoming a director, it was this defendant's subsequent speculation that is the "vice within the purview of § 16(b)." Blau v. Ogsbury, supra. Judge Hincks' dissenting opinion in Stella v. Graham-Paige Motors Corporation, supra, which supports the position of the present defendant and is relied on by him is expressly based on a rationale which the majority did not adopt. In addition, it is significant that while the proscriptions of section 16(b) apply to a 10% beneficial owner only if he is such both at the time of purchase and sale, there is no such limitation in the case of officers and directors.[5]

■■■ Allen finally asserts that his liability, if any, must be limited to 38.5% of the alleged profit. He relies on the decision in Rattner v. Lehman.[6] In that case the defendant director was held liable to the corporation only for his proportionate share of the profits resulting from a purchase and sale conducted in the name of a partnership of which he was a member. Here, however, the sale of the 5,750 shares was conducted by the defendant Allen acting for himself. His proportionate interest in the number of shares purchased by Allen & Company on July 10, 1956, exceeded the number he sold individually. The entire profit on the 5,750 shares is therefore his. He is liable for that amount with interest.

2. Gratz v. Claughton, 2 Cir., 187 F.2d 46, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Smolowe v. Delendo Corporation, 2 Cir., 136 F.2d 231, 148 A.L R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

3. Blau v. Ogsbury, 2 Cir., 210 F.2d 426, 427.

4. 2 Cir., 232 F.2d 299, certiorari denied 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52.

5. See 95 U. of Pa.Law Review 468, 488; 66 Harvard Law Review 612, 632.

6. 2 Cir., 193 F.2d 564.

The facts with regard to plaintiff's claim against Albert Warner and Jack L. Warner are different and, only to a point, undisputed. During the period from December 9, 1955 through December 13, 1955, Albert Warner and Jack L. Warner each bought 5,000 shares of stock in Warner Bros. Pictures, Inc. at $19.875 per share. Additional purchases made in January of 1956 are not now in issue, the defendants having voluntarily paid to the corporation the profit realized on the later sales.

On May 8, 1956 an agreement was signed by Albert Warner, Jack L. Warner and Harry M. Warner designated "Sellers" and David G. Baird designated "Buyer." By the terms of this agreement Baird would be entitled to delivery of 800,000 shares of Warner Bros.' stock if he made the following payments: $2,000,000 on May 14, 1956, $10,000,000 on July 16, 1956 and $10,000,000 on September 14, 1956. This constituted a price per share of $27.50. Baird was given the right to make the first two payments by depositing in escrow securities of an equivalent value. Pursuant to this agreement Baird deposited $2,000,000 worth of securities in escrow on May 10, 1956. Thereafter, on June 29, 1956, he assigned his rights under the agreement to Jack L. Warner. The latter, on July 10, 1956, purchased 151,000 shares of Warner Bros.' stock from Albert Warner at $27.50 per share and on the same day sold 600,000 shares at $25 per share.

Plaintiff alleges that the agreement dated May 8, 1956 constituted a sale within the meaning of section 16(b), that all subsequent transactions were pursuant to this sale and that the defendants are liable to the corporation for profits resulting from such of these sales as can be matched against the purchases of December, 1955. Defendants, on the other hand, contend that the May 8 agreement was nothing more than an option, that no profit was ever realized therefrom and that the ultimate disposition of the stock was according to new and independent negotiations.

Thus there are presented questions of fact which preclude summary judgment in favor of the plaintiff.

The defendants, as noted, seek summary judgment in their favor on the ground that no sale took place within the statutory period. Assuming their view of the May 8 agreement to be the correct one, that it was merely an option, the deposit of $2,000,000 in securities on May 10 must be considered. This was not just a binder but constituted a substantial portion of the purchase price. By the terms of the agreement, any payments made were to be treated as liquidated damages in the event that all payments were not forthcoming. Thus if the agreement was only an option, it would appear to have been exercised on May 10 by the deposit of the securities. As of that day then the buyer would be bound to complete the agreement or suffer the loss of his first payment and the sellers bound to await further payment by the buyer. The rights and obligations of the respective parties had become fixed and there was a sale within the meaning of section 16(b). Blau v. Ogsbury, supra.

The defendants raise two final points with regard to the May 8 agreement. The first, that they were prompted by a desire to benefit the corporation throughout these dealings, is irrelevant. Motive is immaterial in determining liability under section 16(b).[7] The second, that the express conditions under which the buyer could terminate the agreement prevented it from being considered a sale, is also without merit. These conditions had no effect on the rights and obligations of the parties as they existed on May 10, 1956. There is no allegation that the buyer ever elected to ter-

**7.** Stella v. Graham-Paige Motors Corporation, D.C., 132 F.Supp. 100, remanded on other grounds 2 Cir., 232 F.2d 299, certiorari denied 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52; Carr-Consolidated Biscuit Company v. Moore, D.C., 125 F.Supp. 423.

minate and his assignment to Jack L. Warner on June 29, 1956 indicates the contrary.

Summary judgment, therefore, is not available to either of these parties and the issues of fact raised by the pleadings and the affidavits must await determination at a trial.

The plaintiff is entitled to reasonable counsel fees. If the parties agree on this, the order to be entered herein on notice may so provide. Otherwise the court will hear the parties on the amount, upon the settlement of the order.