**Miriam G. LEVY, Plaintiff,**

v.

**Louis G. SEATON and General Motors Corporation, Defendants.**

**No. 72 Civ. 4765.**

United States District Court,
S. D. New York.

March 12, 1973.

Morris J. Levy, New York City, for plaintiff.

Davis, Polk & Wardwell, New York City by Robert B. Fiske, Jr., Bartlett H. McGuire, New York City, of counsel, for defendant Seaton.

Ross L. Malone, New York City by Lawrence W. Middleton, New York City, of counsel, for defendant General Motors.

GURFEIN, District Judge.

Motion for summary judgment by the defendants, Louis G. Seaton and General Motors Corporation. This is an action

in which the plaintiff, a stockholder of General Motors, seeks to recover on its behalf against Seaton for alleged violation of Section 16(b) of the Securities Exchange Act of 1934 and of Section 10 and Rule 10b–5 thereunder, 15 U.S.C. § 78p(b) and § 78j.

### THE § 16(b) CLAIM

The § 16(b) claim is to recover alleged profits made by Seaton as a result of his purchases and sales of General Motors stock within a period of less than six months.[1] The plaintiff alleges that she made demand upon General Motors to sue Seaton but that it failed to do so.

The undisputed facts are that Seaton was a Vice President of General Motors in charge of its personnel staff from January 1, 1957 through August 31, 1970. His resignation as Vice President became effective at the close of business on August 31, 1970 (Affd. of Pltf. Counsel in Opp. p. 2).

On March 19, 1962, General Motors granted an option to the defendant Seaton for the purchase of its common shares at $56.82 per share. On August 31, 1970, the date when his resignation became effective, Seaton still had not exercised his option for 2,151 shares (Affd. of Pltf. Counsel in Opp. p. 2). The option by its terms would expire three months after the resignation became effective, or on November 30, 1970.

On November 24, 1970, Seaton sold 2,000 shares of General Motors stock at $75.50 per share. On November 27, 1970 Seaton acquired 2,151 shares at $56.82 per share by exercise of the option which had been granted in 1962 (Affd. of Pltf. Counsel in Opp. p. 2). The plaintiff claims a "short-swing" profit of $37,400—the difference between the price paid by Seaton under his option and the price he received for an equivalent number of shares.[2]

The option price of the 2,100 shares picked up was $56.82. The closing market price of General Motors at the date of exercise of the option, November 27, 1970, was $76.125; at November 24, the date of sale of the 2,000 shares it was $75.75. The actual selling price was $75.50—⅝ of a point less. The price of the stock at the date the option was first exercisable, September 19, 1963, was $78.375. After the sale of November 24, the price of General Motors common stock remained above the selling price of $75.50 at all times until August 1971.

Two questions become immediately apparent. (1) Where *both* the purchase

---

1. Section 16(b) reads:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suits to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purposes of this subsection."

2. In the Local Rule 9(g) statement counsel "denies" some of these facts which he himself averred under oath. That kind of bare denial will not avoid summary judgment.

and the sale within six months of each other occur *after* the officer has left the employ of the corporation does a § 16(b) liability arise? (2) In measuring the "short-swing" profit what is considered the purchase price under the option to determine the profit for § 16(b) purposes?

Though I believe that the second question is subject to easy answer and is dispositive, I shall decide both questions in the interest of judicial economy on the assumption that there will be an appeal.

For § 16(b) purposes an option is a purchase only when it is exercised, not when it is granted. Silverman v. Landa, 306 F.2d 422 (2 Cir. 1962). The option here was exercised by Seaton on November 27, 1970 when he was no longer an officer. That was his "purchase" for § 16(b) purposes. He sold 2,000 shares on November 24, 1970 which was also after his resignation.

We, therefore, confront the novel suggestion that an ex-officer who purchases and sells within six months where both purchase and sale occur when he is no longer an officer is subject to the liability imposed by § 16(b).

There is § 16(b) liability when an officer or director purchases the shares before becoming an insider and sells within six months thereafter. Adler v. Klawans, 267 F.2d 840 (2 Cir. 1959). So too, where an officer or director purchases while an insider and sells after he has ceased being an insider there is § 16(b) liability. Feder v. Martin Marietta Corp., 406 F.2d 260 (2 Cir. 1969), cert. denied, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970).[3]

No case has been cited where the officer or director both purchased and sold after he had ceased being an insider.

The plaintiff argues that the SEC rule purportedly requiring disclosure of transactions subsequent to resignation indicates that the statute itself was meant to cover such transactions. The reliance on the rule, SEC Rule 16(a)–1(e), is misplaced. That rule provides that a person who has ceased to be an officer must file a Form 4 with respect to any change in his beneficial ownership which shall occur on and after the date on which he ceased to be an officer "if such change shall occur within six months after any change in his beneficial ownership of such securities prior to such date."

"Such date" refers to the date on which he ceased being an officer. If he purchases before resigning and sells after his resignation becomes effective but within six months, he must report. This simply adds the reporting requirement to the holding that there is § 16(b) liability in such case. Feder v. Martin Marietta Corp., *supra*. The rule does not cover the situation here presented.

The plaintiff notes however that Seaton did report his transactions on Form 4. That would not be dispositive if it was an unnecessary act based on a mistake of law. See Chemical Fund, Inc. v. Xerox Corporation, 377 F.2d 107, 112 (2 Cir. 1967); see Sec.Ex.Act.Rel.No. 4801, CCH Fed.Sec.L.Rep. ¶ 26,011 (1953); Sec.Ex.Act.Rel.No. 7824, CCH Fed.Sec. L.Rep. ¶ 26,030 (1966). There was a reason for the Form 4 filing, moreover, which does not involve a tracking of a § 16(b) liability, as explained in the margin.[4] There was no change in Sea-

3. The last sentence of § 16(b) states that it does not cover "any transaction where such beneficial owner was not such both at the time of the purchase and sale." The omission of a similar exception for "a director or an officer" makes the sentence inapplicable to such persons. See Feder v. Martin Marietta, *supra*, 406 F.2d at 267; Adler v. Klawans, *supra*; Blau v. Allen, 163 F.Supp. 702, 704 (S.D. N.Y.1958).

4. Seaton also participated in the "General Motors Savings-Stock Purchase Program for Salaried Employees in the United States." Counsel to the SEC stated in a "no action letter" that no § 16(a) report will be required until the employee receives stock in distribution from the trustee upon maturity of a class or upon prior settlement in accordance with the provisions of the program." Letter of October 21, 1955 attached to Coombe

ton's beneficial ownership while he was an officer and within six months of November 1970 and he was not required to report because of any such change.[5]

The circumstance that he was not required to report exempts from Section 16(b) the transaction exempted from Section 16(a). SEC Rule 16a–10.[6] See Adler v. Klawans, *supra*, 267 F.2d at 847. And while doubt has been cast on the exclusive validity of the rule it has not been invalidated. See Feder v. Martin Marietta Corp., *supra*, 406 F.2d at 268. See also Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 92 S.Ct. 596, 600–601, 30 L.Ed.2d 575 (1972).

■ The rationale of the rule is probably that the transaction which takes place after resignation occurs when the person no longer has access to inside information. The only exception would be where the officer or director bought or sold before resignation presumably relying on inside information. He should be barred from making a "short-swing" profit even after he resigns because the profit may be based on the initial inside information. But no reports are required for transactions after a person ceases to be in one of the three categories [insider] covered by Section 16(b).

■ It is conceivable, of course, that an officer picking up inside information might resign immediately, purchase the next day and sell for a short-swing profit.[7] But the illustration is far fetched and not likely to occur in the ordinary course of events. The profit anticipated would have to be extraordinary to be the sole cause of resignation from a livelihood. There is no indication in

the authorities that § 16(b) meant to reach so far. The discussion by Judge Waterman in Feder v. Martin Marietta, *supra*, emphasizes that the "prophylactic enactment of § 16(b) is just as germane to the situation when a person is a director only at the time of purchase as when he is a director only at the time of sale" 406 F.2d at 268. It is my conclusion that where a person is neither an officer at the time of purchase nor at the time of sale, in this case almost three months after severance from the corporation, there is no statutory rule that he is conclusively presumed to have acquired "information . . . by reason of his relationship to the issuer" § 16(b). Any other interpretation would make of a harsh rule an unfair one.

■ There are no short-swing profits to be recovered here, in any event. The purchase price of stock bought pursuant to an option of this sort, for the purpose of computing § 16(b) liability, is the fair market value of the stock on the date on which the option was first exercisable, and not the option price. B. T. Babbitt, Inc. v. Lachner, 332 F.2d 255 (2 Cir. 1964); see Volk v. Zlotoff, 318 F. Supp. 864 (S.D.N.Y.1970); Steinberg v. Sharpe, 95 F.Supp. 32 (S.D.N.Y.1950), aff'd on opinion below, 190 F.2d 82 (2 Cir. 1951).

■ The price on the date when the option was first exercisable, September 19, 1963, was $78.375. This was the purchase price for § 16(b) purposes. The selling price was $75.50—less than the purchase price. Hence there was no profit for § 16(b) purposes. Even if we take the market price at date of exercise —$76.125 as cost, it is still higher than the actual sales price of $75.50.

---

Affidavit. See Rule 16a–8(g)(3). That is correct in the light of Silverman v. Landa, *supra*, for if there is no purchase there is no need to report.

5. The SEC on January 26, 1971 issued a letter in which it stated ". . . Under Rule 16(a)–1(e) any person who ceases to be a director or officer should report on Form 4 all changes which occur in his beneficial ownership within six months of his last change *prior to his cessation*."

CCH Fed.Sec.L.Rep. ¶ 78,008 (emphasis supplied)

6. The SEC rule may not be binding if the courts think it has gone beyond the statute itself. See Greene v. Dietz, 247 F.2d 689, 692 (2 Cir. 1957).

7. He would still have to report if it was within the calendar month of his resignation (Form 4), but that is not dispositive of a § 16(b) liability.

The plaintiff seeks to distinguish *Babbitt, supra,* on the ground that there the option was granted "as part of their employment agreements and were integral parts thereof" and that the Court treated the option as additional compensation. She contends that there is no proof that Seaton got his option as inducement for him to enter into his employment agreement.

There is no valid distinction between an option in an employment agreement and an option granted as an incentive to an employee. As Judge Medina incisively observed, "[A]ll compensation is an incentive; in both cases the consideration for the stock options was the employee's remaining in the employ of the company." Steinberg v. Sharpe, *supra,* 952 Supp. at 33. The rationale of the *Babbitt* doctrine is that the exercise of an option after many years results more in long term profit than in short-swing profit.

## THE § 10(b) CLAIM

There is a bare allegation in the complaint "Upon information and belief that at the times he effected the transactions in the Issuer's securities, as set forth in paragraph numbered '9' herein, the defendant, Louis G. Seaton, possessed inside information with respect to the officers of the Issuer which was not generally available to the investing public or other stockholders of the Issuer, and said defendant unfairly used such inside information in effecting such transactions and profiting therefrom."

There is no support by affidavit of the conclusory allegation. In the 9(g) statement the plaintiff's attorney merely states: "5. Plaintiff denies having any information sufficient to form a belief as to the truth of defendants' statement numbered '6' which alleges that on November 24, 1970 and November 27, 1970, Mr. Seaton had no material information concerning General Motors which was not generally known to the public."

That is not sufficient. The admission that the plaintiff has no information "as to the truth" of the defendants' statement implies as well that she has no information as to its falsity. In short she has no information sufficient to form a belief that Seaton actually had "inside information" at the time of the transaction.

Rule 11 requires an attorney who signs a pleading to represent his honest belief that there is good ground to support the claims asserted in the pleading. This merely adds an ethical responsibility to the conception that a claim that is baseless should not survive. The motion for summary judgment required more than a denial of knowledge from the plaintiff. A § 10b–5 complaint, as in the case of fraud, requires more than general allegations. Fed.R. Civ.P. 9(b); Kellman v. ICS, Inc., 447 F.2d 1305, 1309–1310 (6 Cir. 1971).

I will hold in abeyance the summary judgment motion on Count 2 for sixty days. In the meantime the defendants will answer the plaintiff's relevant interrogatories on the matters relating to whether Seaton had inside information at the time of the transactions involved and the plaintiff may depose Seaton only *on that matter.* The Court will then *re*ceive further affidavits and determine whether amendment of Count 2 will be allowed.[8]

Summary judgment is granted dismissing Count 1 of the complaint. The Court expressly determines that there is no just reason for delay and judgment shall be entered accordingly. Fed.R. Civ.P. 54(b).

The motion by General Motors to tax against the plaintiff its costs, including its attorneys' fees under Fed.R.Civ.P. 54(d), is denied.

It is so ordered.

---

8. Whether a *corporate* recovery for profits based on the misuse of inside information should be afforded is a question not without difficulty. *Compare* SEC v. Texas Gulf Sulphur Co., 446 F.2d 1301, 1308 (2 Cir. 1971) with Haberman v. Murchison, 468 F.2d 1305, 1312 (2 Cir. 1972). It need not be decided at this stage.