**Harry LEWIS, Plaintiff,**

v.

**George L. VARNES and Eli Lilly and Company, Defendants.**

**No. 72 Civ. 4897 (MP).**

United States District Court,
S. D. New York.

Jan. 4, 1974.

Morris J. Levy, New York City, for plaintiff.

Shaw, Bernstein, Scheuer, Boyden & Sarnoff, New York City, for defendant Varnes by Merton Sarnoff, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Lilly.

## OPINION

POLLACK, District Judge.

This is an action in which plaintiff, a stockholder of Eli Lilly and Company ("Lilly"), registered with and listed on the New York Stock Exchange, seeks to recover on its behalf against defendant George L. Varnes for alleged violations of Section 16(b) of the Securities Exchange Act of 1934 and Section 10 and Rule 10b–5 thereunder, 15 U.S.C. §§ 78p(b), 78j, popularly referred to as "short swing" transactions.

*The Section 16(b) Claim*

The § 16(b) claim is to recover alleged profits made by Varnes as a result of his purchases and sales of Lilly stock within a period of less than six months. The plaintiff alleges that he made demand upon Lilly to sue Varnes but that it failed to do so.

The undisputed facts are that Varnes was a Vice President and Director of Lilly from 1966 through January 31, 1971. During the course of his employment with Lilly, Varnes was granted the following relevant stock options: January 20, 1967, 4,000 shares at $89.50 per share; January 19, 1968, 4,000 shares at $103.50 per share; February 17, 1969, 4,000 shares at $79.08 per share; May 18, 1970, 3,000 shares at $87.50 per share. By reason of stock splits, the first two options were increased to 8,000 shares at $44.75 per share and 8,000 shares at $51.75 per share, respectively, prior to Varnes' retirement.

On December 22, 1970, while still an officer and director of Lilly, Varnes exercised part of the 1967 option to purchase 1,600 shares. With the exception of this transaction, on January 31, 1971—the date his resignation and retirement became effective—Varnes had not exercised his various options for Lilly shares. These options by their terms would expire two months after his resignation and retirement became effective, or on March 31, 1971.

On February 2, 1971—two days after his resignation and retirement as an officer and director of Lilly became effective—Varnes purchased 6,400 Lilly shares by exercising the balance of the 1967 option. On the same date, he also purchased 8,000 shares by exercising the 1968 option. On March 26, 1971 he purchased 7,000 shares of Lilly stock by exercising the remaining 1969 and 1970 options. However, plaintiff believes that these latter two purchases are not material herein "because defendant's purchases can only be matched against the 6,300 shares which he sold on July 6, 1971."

On July 6, 1971—more than six months after his last purchase while still

an officer and director of Lilly, but less than six months after both the effective date of his resignation and retirement and the date of his first post-retirement purchases—Varnes sold 6,300 shares of Lilly stock. Three thousand of these shares had been acquired by him by the exercise of the 1970 option on March 26, 1971; the remaining 3,300 shares had been acquired by him by the exercise of the 1969 option on March 26, 1971. He realized net proceeds of $781,631.29 from the sale of these shares. Varnes made no other sales of Lilly stock in 1971.

Plaintiff claims a "short-swing" profit of $499,706.29 resulted therefrom—the difference between the price paid by Varnes for the shares purchased on February 2, 1971 under the 1967 option ($281,925.00) and the price he received upon the sale of an equivalent number of shares. Although he attacks its validity herein, plaintiff recognizes that Rule 16b–6, if valid, would limit any recovery from Varnes to the sum of $151,631.29.[1]

■ The question presented herein by the facts recited above is in all respects identical to that which was before Judge Gurfein in Levy v. Seaton, 358 F. Supp. 1 (S.D.N.Y.1973), an action in which plaintiff's counsel herein represented plaintiff Levy. Judge Gurfein stated the question thus: "Where *both* the purchase and the sale within six months of each other occur *after* the officer has left the employ of the corporation does a § 16(b) liability arise?" Judge Gurfein, in a well reasoned opinion, answered the question in the negative, and that answer—clearly the correct one—is dispositive of plaintiff's claim herein.[2]

1. Because of the disposition reached herein, it is unnecessary for this Court to pass upon the validity, *vel non*, of Rule 16b–6. However, the Court of Appeals has heretofore upheld that rule in Kornfeld v. Eaton, 327 F.2d 263 (2d Cir. 1964).

2. Apparently recognizing the novelty of the question presented—as does plaintiff herein,

*see* Plaintiff's Memo in support, at 15—Judge Gurfein proceeded "on the assumption that there will be an appeal." 358 F.Supp. at 4. Accordingly, he entered judgment pursuant to Fed.R.Civ.P. 54(b) on March 15, 1973. No appeal was taken by the plaintiff in *Levy.*

Accordingly, defendant is entitled to summary judgment dismissing the § 16(b) claim.

### The Section 10(b) Claim

Plaintiff has also pleaded a claim for relief alleging a violation of § 10(b) of the Act and Rule 10b–5 thereunder. A similar claim was likewise appended to the § 16(b) claim pleaded in Levy v. Seaton, *supra.* There, Judge Gurfein characterized as "a bare allegation" language virtually identical to that contained in the instant complaint which, insofar as it attempts to state a claim under § 10(b), is predicated on "information and belief" of an unspecified nature. Defendant argues cogently that an allegation that "defendant . . . possessed inside information with respect to the affairs of the Issuer which was not generally available to the investing public", and that he "unfairly used such inside information in effecting . . . transactions" such as those complained of herein, fails to state a claim upon which relief may be granted in favor of the corporation as against its former officer or director. This may well be so, but it is not a question this Court is required to decide at the present time.

A complaint alleging a § 10(b) or Rule 10b–5 claim sounds essentially in fraud. As such, it is subject to the requirement of Fed.R.Civ.P. 9(b) that the circumstances constituting fraud shall be stated with particularity. The office of a fraud complaint is to seek redress for a wrong, not to find one. Segal v. Gordon, 467 F.2d 602, 607–608 (2d Cir. 1972). Allegations of fraud have serious repercussions in the business world, and should not be cavalierly appended to other claims for their presumed *in terrorem* effect. *See* Fed. R.Civ.P. 11.

Here, there is no support whatsoever for the conclusory allegations of fraud pleaded. Accordingly, the complaint is defective on this point and will be dismissed for that reason.

Summary judgment dismissing the § 16(b) claim is granted to defendant. The § 10(b) claim is dismissed for failure to comply with Fed.R.Civ.P. 9(b), with leave to replead within 20 days upon a proper factual showing or, if upon information and belief, upon a full and sufficient assertion of the basis therefor.

Complaint dismissed accordingly with costs.

So ordered.