Oscar **ROBERTSON** et al., Plaintiffs,

v.

**NATIONAL BASKETBALL ASSOCIATION, a joint venture, et al., Defendants.**

**No. 70 Civ. 1526.**

United States District Court, S. D. New York.

July 8, 1975.

Weil, Gotshal & Manges, New York City, for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for the NBA defendants other than Madison Square Garden Corporation and Madison Square Garden Center, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Madison Square Garden Corp. and Madison Square Garden Center, Inc.

Frederick P. Furth, San Francisco, Cal., for the ABA and all of its member teams other than Long Island Sports Enterprises, Inc.

Michael H. Goldberg, New York City, of counsel, to the American Basketball Association and its member teams other than Long Island Sports Enterprises, Inc.

Sommer, Tinkham, Barnard, Freiberg & Scopelitis, Indianapolis, Ind., Associate Counsel for the ABA and all of its member teams other than Long Island Sports Enterprises, Inc.

Spengler, Carlson, Gubar & Churchill, New York City, for Long Island Sports Enterprises, Inc.

## OPINION

ROBERT L. CARTER, District Judge.

### I

On May 19, 1975, oral argument was heard on various motions brought on and then pending in this action. It was agreed at that time that early resolution of three of the apparent plethora of problems contributing to a pretrial imbroglio would aid significantly in prompt and orderly discovery among the parties. Accordingly the three critical issues—(1) whether the National Basketball Association ("NBA") defendants are precluded at trial from raising a defense based on the reasonableness of the practices challenged in this case;[1] (2) whether amended Count Three of the American Basketball Association's ("ABA") cross-claim satisfies the particularity requirement of Rule 9(b), F.R.Civ.P.; and (3), whether the NBA may submit interrogatories and requests for the production of documents to the nonrepresentative members of the class on whose behalf this suit was brought —are addressed.

### II

*Reasonableness Defense to the Antitrust Claims*

Plaintiffs contend that the court's earlier opinion in this case, reported at 389 F.Supp. 867, held that the restraints under attack here are *per se* violative of the Sherman Act, thereby precluding a defense based on reasonableness.[2]

1. *See Robertson v. National Basketball Association*, 389 F.Supp. 867 (S.D.N.Y.1975).

2. In *Chicago Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 62

While that earlier opinion made clear the court's belief that the restraints in controversy are illegal under the antitrust laws, 389 F.Supp. at 890–91, 895, no final determination as to the invalidity of the provisions and practices in question was made.

The question arose on a motion for summary judgment by the NBA, based, primarily, on the contention that the NBA was protected by a labor exemption to the antitrust laws. The supportive documentary proof was fairly limited to this contention. Plaintiffs did not seek summary judgment themselves; they merely opposed the NBA motion. No final determination could have been rendered in any event without a full-scale hearing on the merits with both sides presenting live as well as documentary evidence. At this stage of the proceedings, I cannot be certain what the full proof is on any controverted issue

and, therefore, no line as to relevant proof can be fixed.

 Accordingly, defendants are not barred from raising all possible defenses [3] to plaintiffs' action, including one based on the economic necessity of retaining the challenged restraints. Plaintiffs, of course, are free to move to strike the rule of reason defense once all pretrial discovery has been concluded. At that point defendants will know what their evidentiary defense will consist of on this issue. A full hearing to determine whether the issue is appropriate for consideration by the jury will then be in order.

### III

*Amended Count Three of the ABA Cross-Claim*

By written agreement dated May 7, 1971, (the "Agreement"), the NBA and

---

L.Ed. 683 (1918), the Supreme Court stated the following approach to antitrust issues: "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts."

Certain practices were found to be so anti-competitive, however, that they have been declared illegal *per se*, freeing the court from the complicated task which follows the utilization of the rule of reason approach. *See Northern Pac. Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958).

3. It should be noted, however, that the court is not persuaded by the argument that the NBA, as a joint venture, is immune from Sherman Act condemnation. Neither *Levin v. National Basketball Association*, 385 F. Supp. 149 (S.D.N.Y.1974) nor *San Francisco Seals, Ltd. v. National Hockey League*, 379 F.Supp. 966 (C.D.Cal.1974) concerned the prevention of competition for players.

Moreover, both courts adhered to the proposition that the antitrust laws do apply to professional athletic leagues, regardless of joint venture status, and that joint action by members of a league can have antitrust implications. 385 F.Supp. at 152; 379 F.Supp. at 968, 970–71. Here, the relevant market is the competition for player services, the teams have agreed not to compete in that market and there exists an arguable anticompetitive purpose, effect and injury in that market. The other cases cited by the NBA for this "joint venture" exemption only hold that for certain purposes the league and its member clubs do not violate the antitrust laws when they act together. Those cases did not involve restraints geared to the elimination of competition for players. *See United States v. National Football League*, 116 F.Supp. 319 (E.D.Pa.1953) (restraints on telecasting of football games); *American Football League v. National Football League*, 205 F.Supp. 60 (D.Md.1962), *aff'd*, 323 F.2d 124 (4th Cir. 1963) (monopolization of major league professional football). Other cases merely involved venue requirements for bringing an antitrust action, *Hawkins v. National Basketball Association*, 288 F.Supp. 614 (W.D.Pa.1968); *American Football League v. National Football League*, 27 F.R.D. 264 (D.Md.1961), or the service of process, *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 709 (E.D.N.Y.1972).

the ABA attempted to end their differences and to seek a merger of the two leagues, the latter conditioned upon Congressional legislation exempting the combined league from the antitrust laws. The two parties released all claims they had asserted against each other, provided for a stipulation of dismissal with prejudice of an ABA antitrust suit then pending against the NBA, and agreed to use their "best efforts" until January 4, 1974, to procure the passage of reasonable and appropriate legislation which would enable the NBA and the ABA to combine their operations into an expanded single league with a common draft.

As originally pleaded, Count Three of the cross-claim [4] was based on the allegation that the NBA's express contractual representation to use their best efforts to secure the exempting legislation was "false and fraudulent" and "made . . . with knowledge that it was false and fraudulent." See n. 4 ¶ 72, *supra*. In October, 1974, the NBA moved, pursuant to Rules 12(b)(6) and 56(b), F.R.Civ.P., for judgment dismissing the entire cross-claim.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Because of the wide range of conduct which fraud encompasses, "a defendant needs a substantial amount of particularized information about [the] claim in order to enable him to understand it and effectively prepare his response." Wright & Miller, *Federal Practice and Procedure*, § 1296, at 400 (1969). Sensitivity to the particularity requirement also reflects judicial awareness of the harm that comes to a defendant's reputation when he is charged with such wrongdoing. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Lewis v. Varnes*, 368 F.Supp. 45, 47 (S.D.N.Y.), *aff'd*, 505 F.2d 785 (2d Cir. 1974). Accordingly, conclusory allegations that conduct was fraudulent are insufficient, *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971), for such general assertions serve no informative function, *Lynn v. Valentine*, 19 F. R.D. 250, 254 (S.D.N.Y.1956). "Facts must be alleged which, if proven, would constitute fraud or which lead clearly to the conclusion that fraud has been committed," *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 182 F.Supp. 18, 31 (S.D.N.Y.1960).

On March 5, 1975, this court, following oral argument on the motion, ruled that Count Three was not "well stated," and that if the ABA sought to allege fraud, it would "ha[ve] to be stated

---

4. *COUNT THREE*
(Damages For Fraud)
I
*JURISDICTION OF THE COURT*

70. Cross-claimants' claim arises out of the same facts alleged in support of COUNT ONE herein, and the jurisdiction of this Court is invoked under the doctrine of pendent jurisdiction.

II
*VENUE, PARTIES, AND CO-CONSPIRATORS*

71. Cross-claimants reallege and incorporate herein by this reference the averments of paragraphs 2 through 6, inclusive, above.

III
*OFFENSES CHARGED*

72. In the Second Agreement, cross-defendants represented that they would use their "best efforts to procure the passage" of "reasonable and appropriate" Congressional legislation exempting a merger or consolidation between the ABA and the NBA from the federal antitrust laws.

Cross-defendants' representation to cross-claimants that they would employ their "best efforts" to secure "reasonable and appropriate" exempting legislation so as to effectuate a "merger" between the ABA and the NBA was false and fraudulent, and cross-defendants made such representation with knowledge that it was false and fraudulent. Cross-defendants intended to induce cross-claimants to act or refrain from acting in reliance on said false and fraudulent representation.

73. Cross-claimants justifiably took or refused to take certain actions as a consequence of cross-defendants' false and fraudulent representation, and have been damaged as a proximate result thereof.

more particularly in regard to the Agreement [for] . . . the complaint as it presently stands really alleges a breach of the Agreement." (Transcript of March 5, 1975, hearing at 23–24). Accordingly, the ABA was directed to serve an amended pleading setting forth with particularity the fraud alleged.

The ABA's amended Count Three [5] was served on March 24, with the NBA subsequently renewing their motion to

5. 

*COUNT THREE*
(Damages For Fraud)

I

*JURISDICTION OF THE COURT*

70. Cross-claimants' claim arises out of the same facts alleged in support of COUNT ONE herein, and the jurisdiction of this Court is invoked under the doctrine of pendant [sic] jurisdiction.

II

*VENUE, PARTIES, AND CO-CONSPIRATORS*

71. Cross-claimants reallege and incorporate herein by this reference the averments of paragraphs 2 through 6, inclusive, above.

III

*ACTS OF CROSS–DEFENDANTS AND CO–CONSPIRATORS AND OFFENSES CHARGED*

72. On May 4, 1970, shortly after plaintiffs filed their original complaint herein cross-claimants and cross-defendants consented to the entry of a preliminary injunction prohibiting the two leagues from merging or entering into a non-competitive agreement. That injunction, however, permitted the two leagues to petition Congress for legislation exempting a joint merger from the antitrust laws.

73. The "Second Agreement" was an attempt by the ABA to effectuate what was contemplated in the proviso of the Court Order dated May 4, 1970, to wit: a mechanism by which the two leagues could petition Congress for legislation exempting a joint merger from the antitrust laws.

74. By the terms of the "Second Agreement", cross-claimants and cross-defendants consented to employ their "best efforts", from the date of the Second Agreement's consummation, i. e., May 7, 1971, through January 4, 1974, in order to procure passage of "reasonable and appropriate" legislation exempting a merger of the two leagues from the antitrust laws.

75. For cross-defendants, however, the *sine qua non* of their entering into the "Second Agreement" was a dismissal "with prejudice" of the ABA Case then pending in the United States District Court. Without such a "with prejudice" dismissal, cross-defendants refused to even discuss seeking a legislative exemption from Congress.

76. The "Second Agreement" provided in relevant part:

". . . WHEREAS, the NBA and ABA desire to associate together for the purpose of petitioning Congress to enact legislation whereby the NBA and ABA would be permitted to combine their operations in an expanded single league; and . . .

"3. *Submission. The NBA and the ABA* through their Merger Committees, promptly *will submit* to the current and successive sessions of Congress through the calendar year ·1973 *such legislation as is reasonable and appropriate to permit the NBA and the ABA to combine their operations in an expanded single league with common draft* (hereafter called 'exempting legislation') . . .

"7. *Best Efforts.* Each of the signatories to this Agreement and its successors agrees that, at least until the end of the calendar year 1973, it will use its best efforts to procure the passage of exempting legislation contemplated by paragraphs 3 and 4 hereof . . . " (Emphasis supplied).

77. The aforesaid representations were made by cross-defendants to cross-claimants for the sole and exclusive purpose of inducing the cross-claimants to effectuate "with prejudice" dismissals of the ABA Case. The cross-defendants' representations to the cross-claimants that cross-defendants would employ their "best efforts" to secure "reasonable and appropriate" exempting legislation so as to effectuate a "merger" between the two was false and fraudulent, and cross-defendants made such representations with full knowledge that it was false and fraudulent.

78. Cross-defendants' representation that they would submit to Congress through the calendar year 1973 "such legislation as is reasonable and appropriate" to permit cross-claimants and cross-defendants to combine their operations in an expanded single league with a common draft was false and fraudulent, and cross-defendants made such representations with knowledge that it was false and fraudulent.

79. Cross-defendants made such false and fraudulent representations to cross-claimants for the sole and exclusive purpose of inducing cross-claimants to effectuate "with prejudice" dismissals of the ABA case. Cross-defendants intended to induce cross-claimants to effectuate such "with prejudice" dis-

dismiss on the grounds that the count, as amended, still failed to meet the pleading requirements of Rule 9(b).

■ The motion is well taken. Aside from the addition of paragraphs which merely relate the history of the events leading to the Agreement and citation of the terms of the Agreement itself, the only change in the original defective model is the inclusion of allegations charging that the NBA made their "best efforts" representation for the sole purpose of inducing the ABA to effectuate a "with prejudice" dismissal of the suit against the NBA and that the ABA relied upon that representation by so dismissing the action. The same conclusory allegations of fraud which inhered in the earlier count permeate the amended count, *viz.*, that the NBA's representation in the Agreement was "false and fraudulent, and . . . made . . . with full knowledge that it was false and fraudulent." See n. 5, ¶¶ 77, 78, *supra.*

In *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969), plaintiffs sued for breach of contract and also for recission on the ground that the contract " 'was procured by fraud and misrepresentation on the part of [defendant] and its agents as to its intentions and ability' " to market a certain product. 410 F.2d at 576. The Court of Appeals held that this allegation "[b]y itself . . . is plainly insufficient to state a claim for fraud under Rule 9(b), Fed.R.Civ.P." (footnote omitted). *Ibid.* The ABA argues that their amended count is unlike the allega-

tions found wanting in *Perma Research,* for it does in fact state the circumstances surrounding the alleged fraud.

The "circumstances" in Rule 9(b) refer "to matters such as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Wright & Miller, *supra,* § 1297, at 403. Several courts have dismissed fraud claims which lacked some of these elements. In *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1333 (S.D.N.Y.1974), the court dismissed a counterclaim where "[d]efendants have totally failed to allege, in specific terms, the actions and statements of plaintiff which are claimed to be fraudulent." The court in *Goldberg v. Shapiro*, CCH Sec.L.Rep. [1974–75 Transfer Binder] ¶ 94,813 (S. D.N.Y.1974), found infirm a complaint alleging that an accountant "knew, should have known, or willfully and/or recklessly disregarded its obligation to know that the financial data certified was in fact false" because the complaint made "no mention of who, specifically caused the understatement or overstatement, [and] no allegation of the circumstances of misconduct save for the bare allegations mentioned above." *Id.* at 96, 717. And in *Matheson v. White Weld & Co.*, 53 F.R.D. 450, 452 (S.D.N.Y.1971), the court dismissed a complaint due to its failure to allege facts showing the circumstances of the alleged fraud where there were no allegations "specifically as to what these statements were or of what the omissions consisted."

---

missals in reliance of said false and fraudulent representations.

80. As a result of cross-defendants' aforesaid false and fraudulent representations, cross-claimants did in fact effectuate "with prejudice" dismissals of the ABA case. Were it not for the aforesaid false and fraudulent representations made by cross-defendants, cross-claimants would not have effectuated said "with prejudice" dismissals.

81. Cross-claimants' action in effectuating said dismissals were justifiable in that, at

the time of the execution of the "Second Agreement", cross-claimants presumed that cross-defendants' aforesaid representations had been made in good faith, and were wholly unaware of their false and fraudulent nature.

82. Cross-claimants have been damaged as a proximate result of their justifiable reliance upon cross-defendants' aforesaid false and fraudulent representations.

698

The following passage from *Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 774–75 (D.Colo.1964), is particularly apposite, and highlights the defects in the amended count:

"The complaint in the instant case does not satisfy the requirements of Rule 9(b). The theory of Rule 9(b) is that the defendant in a case wherein the plaintiff alleges either fraud or mistake—unlike defendants in other actions—should be rather specifically apprised by the plaintiff's pleading of the occasion on which and the circumstances under which he allegedly defrauded a particular plaintiff. It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt directly with him, and he can describe the circumstances under which particular defendants dealt directly with him. Under Rule 9(b) the plaintiff can not be required to allege with particularity the manner in which individual defendants acted in concert, but there is no justification for the secreting of information identifying the actors in the drama and the occasions on which they directly confronted the plaintiffs.

. . . . . .

"Rule 9(b) . . . only requires the identification of the circumstances constituting fraud or mistake. That requirement means . . . that individual plaintiffs should identify particular defendants with whom they dealt directly . . .; that individual plaintiffs should designate the occasions on which affirmative misstatements were allegedly made to them—and by whom; and that individual plaintiffs should designate what af-firmative misstatements or half-truths were directed to them—and how."

The allegations here are "merely conclusory and clearly do not apprise the defendants of the claims made against them. . . . Some further explanation of the allegations is necessary to indicate how they constitute fraud." *Felton v. Walston And Co.*, 508 F.2d 577, 581 (2d Cir. 1974). For example, no mention is made in the amended count of who specifically caused or made the representation, and to whom. Similarly absent are any allegations which describe the circumstances under which the author or authors of the representation caused it to be made, that is, the whens and wheres of the alleged fraudulent representations. Finally, the amended count does not reveal the specific acts which are part and parcel of the fraudulent conduct, that is, in what way the fraud was perpetrated, and by whom.

■ Amended Count Three still appears to merely allege a failure of performance. The ABA has had sufficient opportunity to redraft the count to assert a claim of fraud properly if such claim existed. *See, Segal, supra,* 467 F. 2d at 607–608. Accordingly, the NBA's motion to dismiss amended Count Three with prejudice is granted.[6] *Felton, supra,* 508 F.2d at 582; *Mooney v. Vitolo,* 435 F.2d 838, 839 (2d Cir. 1970); *Cf. Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir. 1972).

IV

*Class Discovery*

The NBA defendants also move to overrule plaintiffs' objections to inter-

**6.** This disposition obviates the need to consider the NBA motion for summary judgment for failure of amended Count Three to state a claim upon which relief can be granted.

rogatories and document requests, submitted pursuant to Rules 33 and 34, which were directed at the entire class. Plaintiffs' objections are grounded on the proposition that class members are not "parties" to the action—hence not subject to the discovery devices of Rule 33 and 34—and further that these interrogatories and document requests are designed to expose the more than 400 class members to undue annoyance and hardship.

The use of discovery devices against nonrepresentative class members raises the troublesome conflict between "the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense." Comment, *Making the Class Determination in Rule 23(b)(3) Class Actions*, 42 Fordham L.Rev. 791, 811 (1974) [hereafter *Making the Class Determination*]. Courts facing this problem have reached various conclusions. Some have rejected the use of such devices under the circumstances of the cases before them, though recognizing the applicability of their use at "an appropriate time and for essential purposes," *Gardner v. Awards Marketing Corp.*, 55 F.R.D. 460, 462 (D.Utah 1972); *Bisgeier v. Fotomat Corp.*, 62 F.R.D. 118, 119–121 (N.D.Ill.1973). One circuit has held that, under certain circumstances, class members who do not comply with discovery under Rules 33 and 34 may find their claims dismissed with prejudice. *Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999 (7th Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). Some courts have taken a third position, declaring that treating class members as parties conflicts with Rule 23, effectively emasculating the class action procedure. *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D.Ga.1972); *Fischer v. Wolfinbarger*, 55 F.R.D. 129 (W.D.Ky. 1971); *See also Bucalo v. General Leisure Products Corp.*, 15 Fed.R.Serv. 2d 564, 566 (S.D.N.Y.1971); *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 488–89 (S.D.N.Y.1973); *Lamb v. United Security Life Co.*, 59 F.R.D. 44, 48 (S.D.Iowa 1973).

Unlike "typical" class actions which arise under Rule 23(b)(3), this (b)(1) class is composed of fairly finite, readily identifiable members with not insubstantial claims who specifically authorized this litigation and who have financed it since its inception. Such cohesiveness is normally lacking in the "ordinary" class action. The propriety of allowing some form of class discovery should gain force when these factors appear. *Cf. Making the Class Determination, supra*, 42 Fordham L.Rev. at 807–808. Accordingly, the "strict" approach, which would allow no class discovery under Rules 33 and 34, *see Wainwright* and *Fischer, supra*, must be rejected in favor of a more pragmatic resolution.

*Brennan*, the leading authority for the "liberal discovery" approach, found that the "spirit" of Rule 23(d)—with its general grant of discretion in the trial court—empowered the court to order discovery of class members, and similarly countenanced the utilization of the sanctions of Rule 37(d) to force compliance with such orders. Though recognizing that "an absent class member is given a 'free ride' under Rule 23 and has no duty to actively engage in the prosecution of the action . . . the absent class member's interests are identical with those of the named plaintiff and his rights and liabilities are adjudicated in the principal suit." 450 F.2d at 1005. The court noted, however, that "absent class members should not be required to submit to discovery as a matter of course," discovery being appropri-

ate only when "necessary or helpful to the proper presentation and correct adjudication of the principal suit." *Ibid.* Hence the Court of Appeals for the Seventh Circuit set forth the following guidelines:

> "Before ordering such discovery, a trial court must be assured that the requested information is actually needed in preparation for trial and that discovery devices are not used to take unfair advantage of 'absent' class members." *Id.* at 1006.

*Cf. Gardner, supra,* 55 F.R.D. at 463 (class interrogatories authorized only "upon a strong showing of necessity or at least of likely material aid in the resolution of common issues").

■ NBA defendants seek class discovery in three broad areas—bargaining history, reasonableness of the restraints, and fact and amount of damages. The requisite showing of relevance and need has been made for bargaining history and reasonableness of the restraints. As to the first category, this court has held that the applicability of the labor exemption to the antitrust laws will turn, in part, on the history of bargaining. 389 F.Supp. at 895. At least at this juncture, it appears that the history of individual bargaining between player and club, specifically authorized by collective agreements between the Players Association and the defendants since 1966, is relevant in determining "whether the controversial restraints came into being in the context of arm's-length union-employer negotiations, or were imposed unilaterally by the NBA." *Ibid.*

■ Regarding the second issue, the reasonableness of the challenged practices, it has been stated earlier in this opinion that the NBA defendants are not necessarily precluded from raising that issue at trial. One relevant consideration in determining the reasonableness of the restraints is the players' own views regarding the necessity for them. *Flood v. Kuhn,* 316 F.Supp. 271, 275, 276 (S.D.N.Y.1970), *aff'd,* 443 F.2d 264 (2d Cir. 1971), *aff'd,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).

■ Plaintiffs' objections to class discovery are well taken, however, to the extent that the NBA defendants seek discovery from class members of information relating to the fact and amount of damages. "[D]iscovery on individual issues should be postponed until a decision on the common questions of law and fact has been made." Comment, *Party Discovery Techniques: A Threat to Underlying Federal Policies,* 68 Nw.U.L. Rev. 1063, 1083 (1974). Even *Brennan* seemed to disapprove of class discovery seeking that information. 450 F.2d at 1005. Since a bifurcated trial procedure will be adopted for this case, separating the issues of liability from individual claims, plaintiffs' objections are sustained and the defendants will not, at this time, have access to the class members themselves for information relating to damages. *See, e. g., Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Gardner, supra,* 55 F.R.D. at 463.

■ The court must also seek to protect the class from undue harassment and excessive taxing of their resources, and from the danger of the use of full-blown discovery as a means of reducing class size. To this end, defendants' right to discovery in the areas heretofore noted is conditioned by the following two limitations: First, the NBA can seek discovery in the allowable areas from the fifty class members who were player representatives between 1964 and 1975, and also from an additional sample of not more than twenty-five persons from the remaining ranks of the class; Second, compliance with such discovery will not be exacted by the threat of dis-

missal under Rule 37(d)(2), *see Korn v. Franchard Corp.*, 50 F.R.D. 57, 60 (S.D. N.Y.1970); Note, *Requests for Information in Class Actions*, 83 Yale L.J. 602, 618 (1974). Unlike *Brennan*, the class members here cannot "opt out" from the action and avoid the choice of furnishing information or facing dismissal. The court fully expects, however, that the issue of sanctions will remain theoretical and academic.

## V

*Summary of Determinations*

The defendants are not barred, at this stage, from raising all possible defenses to plaintiffs' action. The motion to dismiss amended Count Three of the ABA cross-claim is granted. The motion to overrule plaintiffs' objection to class discovery is granted to the extent stated in this opinion.

So ordered.