NICHOLAS H. AND MARY JANE SERRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
SERRIS v. COMMISSIONER
Docket No. 5790-77.
United States Tax Court
T.C. Memo 1978-500; 1978 Tax Ct. Memo LEXIS 15; 37 T.C.M. (CCH) 1851-54; December 19, 1978, Filed *15 Petitioner claimed a loss equal to the decline in value of stock he was prohibited from selling as an insider within the purview of the Securities Act of 1934. Held,Sec. 165 and Income Tax Regs. sec. 1.165-4(a) require an identifiable event to establish amount of loss. While petitioner's status as an insider prohibited him from protecting himself against the inevitable loss in value resulting from publication of certain adverse facts, his stock was not rendered valueless. The amount and duration of any reduced value could not be determined with the requisite certainty. Nicholas H. Serris, pro se. Hans G. Tanzler, III, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, on March 18, 1977, issued a statutory notice in which he determined a deficiency in petitioners' Federal income tax for their taxable year 1974 in the amount of $10.072. After concessions by the parties the issues remaining for our determination are: (1) whether petitioners may deduct in 1974 the decline in value of stock sold in 1975, and (2) whether such deduction, if any, is ordinary or capital in character. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, two supplemental stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Nicholas H. and Mary Jane Serris, husband and wife, resided in Miami, Florida at the time of filing the petition herein. Petitioners filed a joint Federal income tax return for the calendar year 1974 with the internal revenue service, Chamblee, Georgia. Mary Jane Serris is a party to this action only because she joined in the filing of the return *17 and, accordingly, Nicholas H. Serris will hereinafter be referred to as petitioner. From August 1969 until November 1973 petitioner served as senior vice-president of finance and a director of General Development Corporation (hereinafter GDC). GDC is a publicly held corporation, listed on the New York Stock Exchange, whose securities were subject to the regulation of the Securities and Exchange Commission. In June of 1967 GDC granted petitioner an option to purchase 15,000 shares of its common stock pursuant to an employee's stock option plan at an option price of $9.75 per share. Petitioner exercised the options in increments over the year 1968 through 1971. He made a practice of selling the shares shortly after the options were exercised. This practice was based on his personal financial plan. The 4,133 shares of GDC common stock at issue were acquired by exercise of stock options on June 16, 1971. The fair market value of such stock on that date was $28.63 per share. Petitioner reported a portion of the gain realized by the sale of stock in 1969 and 1972 as capital gain. This capital gain portion represented the amount realized on sale that was above the market value *18 of the shares on the date the options were exercised. The portion of the gain realized in 1969 and 1972 that represented the difference between the option exercise price and the market value on date of exercise was recognized as ordinary gain. All of the gain on shares sold in 1970 was reported as ordinary income. There was no sale of GDC stock in 1971. In January 1973 the American Institute of Certified Public Accountants published an Industry Accounting Guide which promulgated new rules for accounting in the retail land industry. The effect of the new rules was to significantly reduce GDC's reported earnings and retained earnings. Due to petitioners' position as senior vice-president of finance he was directly involved with implementing this accounting change. In May of 1973 there was a proposed tender offer by City Investing Company to exchange subordinated debentures for 100 percent of the common stock of GDC. This proposed offer was later withdrawn. In 1973 GDC's stock fell from a high of $14.50 per share to a year-end closing of $4.00 per share. As of December of 1973 petitioner owned a balance of 4,133 shares of GDC stock. The approximate per-share value of the *19 stock at the end of 1974 was $5.00. The following table reflects the yearly high and low market prices for GDC common stock: Year
High
Low
1975
6-1/2
2-3/4
1976
6-7/8
3-3/4
1977
7-1/2
4-1/2
On February 23, 1978 the closing value was 6-5/8. On his 1974 return petitioner claimed a deduction of $19,510 representing the 1973 decline in fair market value of the GDC stock. He computed the claimed ordinary loss on a cost basis of $36,042. Respondent disallowed this deduction based on his determination that petitioner did not dispose of his stock instant to a closed transaction and that the stock was not worthless. Respondent also took issue with petitioner's claim that the stock was acquired in connection with his employment rather than as an investment. In May of 1975 petitioner sold the 4,133 shares of GDC stock for $5.04 per share, resulting in an actual loss of $15,664. He did not report this loss on his 1975 income tax return. OPINION Section 165(a) authorizes a deduction for "any loss sustained during the taxable year and not compensated for by insurance *20 or otherwise." Income Tax Regs. section 1.165-4(a) explains that a decline in the value of stock in and of itself, even if extensive, is not a realized loss. Generally, in order for a deduction to accrue, the stock must have been disposed of in a closed transaction or have become completely worthless within the taxable year. Petitioner, however, makes a novel argument and one that might be appealing in a setting other than tax law. He asserts that he should be entitled to take a loss for the depreciation in value of stock that he held and could not sell by reason of his status as an insider within the meaning of the Securities Act of 1934. [1] He also analogizes his situation to that of a securities dealer or bank. *21 Admittedly petitioner was caught in a bind where he had to stand by helplessly and watch the inevitable reduction in value of his stock that followed the publication of adverse facts of which he was aware as an insider. Nonetheless the permanency of the depreciation, and its extent, could not be accurately predicted during 1974. That there be some certainty with respect to the amount of the loss is a reasonable prerequisite to a tax deduction. The use of market value with respect to dealers in securities is not for purposes of calculating a deduction, but for purposes of taking inventory in the process of calculating income. Valuation based on market value is allowed if the dealer normally and consistently keeps his books of account by employing this method. With respect to securities the use of market value is applicable only to dealers, as distinguished from investors and speculators irrespective of whether the purchase and sale of stocks is a part of the taxpayer's trade or business. Income Tax Regs. section 1.471-5. We note that valuing inventories at *22 market value is a common method of calculating income. See Income Tax Regs. section 1.471-2 (c). Petitioner falls squarely within the group distinguished from dealers. His attempted use of market value is not for the purpose of taking inventory in the process of determining the cost of goods sold, but for writing off, as a deduction, the decrease in market value. Income Tax Regs. section 1.165-4(b) does make an exception to the general rule disallowing deductions based on the decline in the value of stock in the case of regulated banks. Thus, if Federal or state authorities require the stock to be written off as worthless or written down to a nominal value, the bank may deduct the resultant loss. However, the deduction is allowed only if such charging off or writing down is based on actual worthlessness of the stock within the taxable year. While petitioner has posited an interesting question with respect to his claimed loss resulting from the reduction in value of GDC stock--whether the section 16(b), Securities Act of 1934, prohibition *23 against insider trading can result in a hypothetical sale which would support a comparable deduction for loss in value of the stock--he has failed to prove actual worthlessness of the stock within the taxable year. Actual worthlessness is a rudimentary requirement for the allowance of a loss when a closed transaction is not involved. Steadman v. Commissioner,50 T.C. 369, 376 (1968), affd. 424 F.2d 1 (6th Cir. 1970). Just as a closed transaction fixes the realizable gain or loss, worthlessness reduces the variable possibilities and establishes a positive basis on which loss can be calculated. While the fair market value of the GDC stock at the close of 1954 ($5.00) had been sharply reduced from the fair market value of such stock at the time petitioner exercised his option ($28.63), it had shown signs of revival when compared to the value of the stock at the close of 1973 ($4.00). A disappointing drop in value does not trigger a tax deduction. Petitioner has not presented evidence that GDC was insolvent at the time of the claimed write-off. He has not presented evidence that the stock was unmarketable. In both 1973 and 1974 GDC was a viable *24 corporation. Its stock was listed on the New York Stock Exchange. While a temporary setback may have resulted from the new accounting rules promulgated by the American Institute of Certified Public Accountants in 1973, the resultant recalculation of earnings did not destroy the corporation. There was a reasonable expectation that the assets would exceed liabilities. Petitioner has failed to show that the GDC stock was worthless. Mere reduction in value will not result in a deductible loss. United States v. S.S. White Dental Mfg. Co.,274 U.S. 398, 401 (1927). Because we uphold respondent's determination on the first issue there is no reason to discuss the character of the loss. Decision will be entered under Rule 155. Footnotes
1. Section 16(b) of the Securities Act of 1934 requires that any insider, as defined in the Act, return any profit he realizes on the purchase and sale of any equity security of the company with whom he has the prescribed relationship. The parties have presented the case as if that prohibition was at all times applicable. In fact there were periods of time when a sale by petitioner of the stock at issue would have resulted in a loss and thus rendered section 16(b) inapplicable. Levy v. Seaton,358 F.Supp. 1↩ (D.C. N.Y. 1973). However, we need not make this distinction since our decision is not based on the applicability or inapplicability of section 16(b).