**B. Delos GARDNER et al., Plaintiffs,**

**v.**

**AWARDS MARKETING CORPORATION, formerly known as Western Premium Company, also formerly known as Gold Strike Stamp Company, a Nevada corporation, et al., Defendants.**

**No. C 250–68.**

United States District Court,
D. Utah, C. D.

July 7, 1972.

Parker M. Nielsen and Don A. Stringham, Salt Lake City, Utah, for plaintiffs.

Merlin O. Baker, Salt Lake City, Utah, for defendant Awards Marketing Corp.

Richard W. Giauque, Salt Lake City, Utah, for defendant Albertsons.

Peter W. Billings, Salt Lake City, Utah, for defendant Utah Wholesale Grocery.

George L. Nelson, Salt Lake City, Utah, for defendant Safeway Stores, Inc.

## MEMORANDUM DECISION

CHRISTENSEN, Senior District Judge.

This action was filed by plaintiffs for themselves and for the benefit of all persons who were engaged in the retail sale of petroleum products during the period January 1, 1965, through December 31, 1968, and who at any time during that period used Gold Strike stamps. In general, the complaint alleges that the Gold Strike Stamp Company (now Awards Marketing Corporation) has been operating its trading stamp program in a manner which discriminates against petroleum retailers who dispense the stamps. Plaintiffs claim that the conduct of Gold Strike and the other defendants was and is in violation of state and federal laws regulating trade in commerce (the Robinson-Patman Act, the Sherman Antitrust Act, the Clayton Act and the State Unfair Trade Competition Act). The defendants have answered denying the principal allegations of the complaint and setting up affirmative defenses in support of their contention that they are under no liability.

One phase of the litigation has already been before the Court of Appeals. Gold Strike Stamp Co. v. Christensen, 436 F. 2d 791 (10th Cir. 1970). The case is now scheduled for trial in the fall on the issue of liability.[1]

The question now before the court is the propriety of permitting defendants to submit what are in the nature of Rule 33 interrogatories to all members of the class, numbering between six and seven hundred individuals or firms. Awards Marketing Corporation has proposed 25 interrogatories calling for detailed information on various aspects of the case but relating primarily to the question of damages. Aside from the inquiries relating to damages, which are concededly unessential in view of the order of severance, Awards Marketing seeks to justify its interrogatories to the entire class on the grounds that some of them relating to whether class members still are in business are necessary to determine whether the representation of the class by the named plaintiffs who are still in business is adequate, and that others pertain to a determination of the relevant product market. This defendant also requests the court's permission to submit interrogatories to a representative number of the class for information on the interrelationship of price differentials and competition, if any, between the parties.

Defendant Utah Wholesale Grocery Company seeks leave to submit five interrogatories, some with subdivisions, to members of the class to ascertain what products or devices other than Gold Strike stamps have been used to promote sales. It claims such information is necessary to determine the relevant product market, especially if that concept for purposes of this case is to be expanded beyond trading stamps. It also contends that such information from class members constitutes the "best evidence" available on the factor of cross-elasticity of demand essential to a determination of relevant product market.

For reasons hereinafter indicated, I have concluded that it would be incompatible with the rationale of Rule 23, an undue burden upon the members of the class, unnecessary, and unjustifiably dilatory to permit the proposed interrogatories at this stage of the case; and, accordingly, the motions for leave to submit them are denied.

█ That discretion exists for the court to allow the submission of reasonable interrogatories to the members of the class at an appropriate time and for essential purposes is not questioned by me. Korn v. Franchard Corp., 50 F.R.D. 57 (S.D.N.Y.1970); Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D. Minn.1968); State of Iowa v. Union Asphalt and Roadoils, Inc., 281 F.Supp. 391 (S.D.Iowa 1968); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966). That the extreme hospitality toward class actions suggested in Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459, should be parlayed into a rigid block against any burden at all upon members of the class must be rejected. The resolution of doubts favorably to class action treatment not only has engendered some scholarly afterthoughts on principle,[2] but in practice,

---

1. The suggestion having been made by several counsel and no objection appearing, it is hereby ordered that the issue of liability to the named plaintiffs and the class is severed from the determination of the amount of damages and the nature of other relief, if any, to be afforded to the plaintiffs and the class they represent should they prevail on liability.

2. Wright, in commenting upon the statement in *Esplin* that "if there is to be an error made, let it be in favor and not against the maintenance of the class action," wrote:
 "But if they encourage courts to allow maintenance of class actions in controversies that are unmanageable by this device, the rule may come into

on remand for mandated class treatment, this "case of the reluctant plaintiffs" raised considerable additional doubts concerning the class action device itself if such compelled treatment is an essential part of it.[3]

 While not seeing in class interrogatories the pervasive repugnance to Rule 23 discerned in Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), I believe that the danger of irreconcilable conflicts between the class action concept and otherwise permissible discovery in certain cases requires that interrogatories submitted to the class be authorized only upon a strong showing of necessity or at least of likely material aid in the resolution of common issues.[4] This is not such a case, nor is this a *Harris* situation, where it was considered necessary to process the claims of the members of the class and to identify the claimants prior to the time of the trial.

This case has been pending for an inordinately long time.[5] The cutoff date for written interrogatories other than to members of the class is now July 15, 1972; all discovery on the issue of liability is to be completed by September 15, 1972; final pre-trial conference is set for October 2, 1972, and the final trial on the question of liability is tentatively scheduled for November 13, 1972.

The further delay to be engendered by allowance of these interrogatories, unless they are indispensable to a fair development of the facts and law on liability, would be obstructive and unjustifiable.

Interrogatories submitted after the trial of the common issues would not necessarily impede the reasonably prompt and efficient resolution of remaining issues. Such interrogatories, if liability to the class on the common issues were found, might then materially aid in reaching a settlement, or as stressed by defendants, in ascertaining the extent of that liability with reference to individual members of the class. Before the common issues are resolved, however, such discovery is not only unnecessary but would tend to hinder the expeditious trial of the common issues. Although interrogatories may be necessary in rare cases to determine if a common issue is present, such is not the case before the court. Here, there can be no claim that common issues are not present; to the contrary, the defendants are seeking information to aid their cause in the trial of the common issues already established.

 The ordered severance renders premature the comprehensive inquiries concerning damages of the individual class members. The claim that addition-

disrepute even for the cases to which it is well suited." C. Wright, Law of Federal Courts 307 (1970).

3. Memorandum Decision (reluctantly) Approving Final Settlement, Hirschi v. Esplin, et al., No. C 243–65 (D.Utah 1969) (unpublished), by which the remarkably few members of the class who did not "opt out" despite the assurance by the Court of Appeals that they were entitled to relief received in the aggregate little more in damages than did their attorneys as fees for their services in the case, including the cross appeal through which the trial court was required to process the case as a class action.

4. There are proposals, including that of the American College of Trial Lawyers, that

Rule 23 be amended to require "opting in" rather than "out" for inclusion in the class; whatever the merits of this proposal may be, the court should not be in a position under any state of facts of so amending the present rule by establishing needless burdens to inclusion.

5. Part of the delay was due to the mandamus proceeding brought by the defendant in Gold Strike Stamp Co. v. Christensen, *supra*. This in the long run may prove to be a helpful step, for it clarified questions of substance as well as procedure. Further delay was encountered as a result of uncertainty respecting the reassignment of the case following my retirement. Responsibility for any further delays must rest with me.

al interrogatories to the class are necessary to ascertain whether the named plaintiffs adequately represent all members of the class is specious; no canvassing of individual members is necessary to know that a substantial number have gone out of business during or since the period specified in the complaint. The possibilities that such damages-seeking class members could be dismissed from the class because of potential conflict with equity-seeking plaintiffs, or that such dismissals would render plaintiffs' representation inadequate are minuscule. Such dismissals could well reduce the size of the class, but hardly obliterate it, when it consisted originally of approximately 700 establishments, all of which were in business only seven to four years ago. Moreover, there has been no demonstration that the interests underlying any injunctive relief sought by plaintiffs in this case are indeed incompatible with those of other class members seeking only damages, which renders dismissal of any out-of-business class member unlikely. The specific identity of such class members at this stage will not assist a whit in determining the legal issue of whether the named plaintiffs who continue in business can provide adequate representation for out-of-business class members. Awards Marketing's tacit assumption that if the representation is inadequate the class action must be dismissed is a non sequitur, since the class may be further limited or additional parties may be joined to provide more adequate representation for the class.

Defendant Awards Marketing's reliance on Free World Foreign Cars, Inc. v. Alfa Romeo, S.P.A., 55 F.R.D. 26 (S.D. N.Y.1972) is not persuasive that class representation may be inadequate in the present case. There, a terminated franchisee was held not authorized to represent the class since he would be interested only in damages while the existing franchisees might be interested in other relief. The court there stated:

"Plaintiff's interest as a farmer and terminated franchisee is not co-extensive and consistent with those of the present franchisees, who, from all that appears in this record, presently depend upon the economic viability of the defendant. Indeed, plaintiff's interests in this suit may be adverse to this group. Its sole interest is in the recovery of damages."

In the case at bar, the parties' situations are reversed: the plaintiffs continue in business and while they may be interested in injunctive relief, or, indeed, in the perpetuation of the defendants' businesses, there is nothing inconsistent, much less antagonistic, between their position and that of the members of the class who presumably would be interested only in damages. From the vigorous representation of all of the members of the class thus far, I see no real problem at this time; but if there is such a problem it can be raised and explored without adding to the burden of class members whether they remain in or out.

That the information disclosed by class members through replies to interrogatories might be of assistance to the defendants otherwise from an evidentiary standpoint or as a matter of tactics is not enough. The usual and reasonable discovery processes (not directed against class members as if they were parties and not requiring them to consult counsel and become acquainted with all of the ramifications of the case and in effect to intervene as parties) should be sufficient to fully develop the facts significant to the question of liability.

The suggestion that a relevant market determination is dependent upon such inquiries to all or some class members would involve objections similar to those applying to other interrogatories proposed. The selection of representative class members against which to apply the requirement of responses would not ameliorate these difficulties but might add to them in establishing a special and unequal liability or immunity of class

members by the court rather than to leave reasonable discovery from witnesses having knowledge of relevant facts to the usual means determined by counsel, subject only to the issuance of protective orders if class members are unduly and unnecessarily penalized or abused, contrary to the spirit of this decision. The further suggestion by Awards Marketing that it is entitled to determine by representative interrogatory if there is competition between the parties and if it was affected by any price differential is untenable. The Tenth Circuit Court of Appeals' opinion in Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 797 (10th Cir. 1970), relied upon in this connection, does not establish such representative discovery in class actions as

a right of the defendants in the sense espoused by them; other discovery means likely were contemplated. In any event, Rule 33 interrogatories in this context would be discretionary with the court. The facts here do not warrant this particular type of discovery in my opinion.

I can well understand Utah Wholesale. Grocery's desire to have a ready-made market survey handed them by the responses of the individual class members. It has maintained both in oral argument and written memorandum that its interrogatories (apparently directed to all members of the class), are necessary to determine the relevant product market, especially with a view to expanding that concept for this case.[6] It has claimed

6. It is doubtful that the defendants in this case could successfully expand the relevant product market concept beyond that of trading stamps. It was suggested in oral argument that use by class members of such promotional devices as "free goods, dishes, gasoline," etc., could result in an expanded definition. While admittedly the widely accepted criteria for market definition derive from such phrases as "reasonable interchangeability" and "cross-elasticity of demand", the cases consistently make such references only in terms of *products or services* offered by *competitors*. *See* United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed. 2d 778 (1966); United States v. Continental Can Co., 378 U.S. 441, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964); United States v. First Nat. Bank & Trust Co. of Lexington, 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed.2d 1 (1964); International Boxing Club of New York, Inc. v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959); United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961); American Crystal Sugar Co. v. Cuban-American Sugar Co., 259 F.2d 524 (2d Cir. 1958); Mercantile Nat. Bank of Chicago v. Quest, Inc., 303 F.Supp. 926 (N.D.Ind.1969); Gottesman v. General Motors Corp., 279 F.Supp. 361 (S.D.N.Y. 1967); United States v. Chas. Pfizer & Co., 246 F.Supp. 464 (E.D.N.Y.1965); Reliable Volkswagen Sales & Service Co. v. World-Wide Auto. Corp., 34 F.R.D.

134 (D.N.J.1963); Affiliated Music Enterprises, Inc. v. Sesac, Inc., 160 F.Supp. 865 (S.D.N.Y.), aff'd 268 F.2d 13 (2d Cir.), cert. denied 361 U.S. 831, 80 S.Ct. 82, 4 L.Ed.2d 74 (1958); Beacon Fruit & Produce Co. v. H. Harris & Co., 152 F.Supp. 702 (D.Mass.1957). There seems to be no such parallel between trading stamps and the myriad self-help promotional devices often employed by retail petroleum outlets. In addition, the cases have recognized that in some instances the relevant product market may be subdivided into sub-markets which then constitute the relevant market for antitrust purposes. *See* United States v. Continental Can Co., 378 U.S. 441, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964); United States v. Aluminum Co. of America, 377 U.S. 271, 84 S.Ct. 1283, 12 L.Ed.2d 314 (1964); United States v. E. I. Du Pont De Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957); United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); Case-Swayne Co. v. Sunkist Growers, Inc., 369 F.2d 449 (9th Cir.), cert. denied, 387 U.S. 932, 87 S.Ct. 2056, 18 L.Ed.2d 994, rev'd on other grounds 389 U.S. 384, 88 S.Ct. 528, 19 L.Ed.2d 621 (1966); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961), cert. dismissed, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46; United States v. First Nat. Bancorporation, Inc., 329 F.Supp. 1003 (D.Colo.1971); *but cf.* United States v. Greater Buffalo Press, Inc., 402 U.S. 549, 91 S.Ct. 1692, 29

that interrogatories to the class rather than market studies or consumer surveys would present the "best evidence" available on such cross-elasticity of demand. It further represents that the proposed interrogatories would impose no burden on class members as answers would not be mandatory.

Regarding the "best evidence" claim, it would conceivably be more useful to defendant's cause to demonstrate by means of a market study all the substitutes generally available to the plaintiff class, instead of limiting its inquiry to those methods actually employed by members of the class during the period in question.

With respect to the burden imposed, cursory examination of the proposed interrogatories reveals a likely substantial burden on the small businessman (or perhaps former businessman) presumably functioning without assistance of counsel. The requested information would require respondents to recall or search out even minute details of old and obscure transactions or negotiations. And, while defendant represents to the court that answers would not be mandatory, i. e., no claims would be barred for failure to answer, the interrogated lay class member would be confronted with instructions that he "should answer" and transmit his responses to the Clerk of the Court. To the layman an unmistakable impression of "no choice in the matter" would be conveyed. Indeed, it would be incongruous from the court's standpoint to give a direction in such a form with the understanding that it could be disregarded with impunity. Irrespective of technical wording, I do not believe that answers to such interrogatories would be an essential or proper burden to be placed upon class members at this time.

■ The short of it is, however, that whether the relevant product market can be expanded beyond trading stamps can be fairly determined without the extraordinary Rule 33 survey sought by the defendant and no convincing reason yet appears even theoretically to support the idea that we shall be concerned with other particular discount or bonus practices in delineating the market. At all events what the relevant product market should be for the purposes of this case can be determined in the context of the trial, fairly and reasonably, without the detailed individual inventory of class members' practices now sought pursuant to Rule 33.

The motions of the respective parties for leave to submit written interrogatories to the members of the class accordingly are denied.

L.Ed.2d 170 (1971), rev'g 327 F.Supp. 305 (W.D.N.Y.1970). It is conceivable that trading stamps could constitute an

acceptable sub-market within the broader area of retail promotional schemes.