**Evelyn KRUEGER, Francis J. Lupardo, Carlyle D. Forde, Walter Grabowski, Nicholas T. Bruck, and Albert J. Dwyer on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**NEW YORK TELEPHONE COMPANY and Nynex Corporation, Defendants.**

No. 93 Civ. 0178 (JGK).

United States District Court, S.D. New York.

Sept. 22, 1995.

Julian Birnbaum, Suja Thomas, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiffs.

Amy Beech, Matthew Miklave, Epstein, Becker & Green, New York City, for defendants.

**448**

## OPINION AND ORDER

KOELTL, District Judge.

This action is brought by six former employees of New York Telephone Company ("NYT") claiming discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the New York Human Rights Law, Executive Law § 290 *et seq.* (the "HRL"), and unlawful interference with pension rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

In motions already pending before the Court, plaintiffs seek to maintain a collective opt-in action for the ADEA claims.[1] One hundred and sixty-two consents have been received and plaintiffs have moved for authorization to proceed on behalf of these consent signers with respect to the ADEA claims. Plaintiffs have also moved to certify class actions under Fed.R.Civ.P. 23 for these same 162 plaintiffs with respect to both the HRL and ERISA claims.

Currently before the Court is plaintiffs' motion to bifurcate liability and damage issues under Fed.R.Civ.P. 42(b). Plaintiffs also seek a protective order against discovery defendants wish to conduct on certain consent signers. Defendants contest both motions and seek an order compelling discovery. For the reasons set forth in this opinion, plaintiffs' motion for bifurcation is denied without prejudice, plaintiffs' motion for a protective order is granted in part and denied in part, and defendants' motion is granted in part and denied in part.

1. Collective action is authorized under ADEA by incorporation of the Fair Labor Standards Act, 29 U.S.C. § 216(b). References to a "class action" with respect to the ADEA claims is for ease of reference only and should not be construed as implying the relevance of Fed.R.Civ.P. 23. *See Heagney v. European American Bank,* 122 F.R.D. 125, 126 n. 1 (E.D.N.Y.1988) ("Section 216(b) displaces the class action devices of Fed.R.Civ.P. 23, which are accordingly unavailable in an ADEA case."); *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 265 (D.Minn.1991) ("Unlike employment discrimination cases under Title VII, ADEA class actions are not governed by [Rule] 23.").

2. Rule 42(b) provides that:
The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be

## I.

■ Plaintiffs move to bifurcate the liability and damages phases of this lawsuit under Fed.R.Civ.P. 42(b).[2] Plaintiffs' motion for bifurcation is plainly premature. On April 28, 1995, this Court issued an order directing the parties to schedule, commence, and complete all discovery by November 1, 1995. This date was determined at a pretrial conference after consultation with the parties as to the length of time necessary to complete all discovery in this case. The parties did not suggest that more time was needed or that a substantial amount of discovery would not be taken and simply left to a later date. The April 28, 1995 order also provided that a Joint Pretrial Order was to be submitted on or before December 8, 1995. Under this Court's rules, motions for bifurcation are appropriate when the Joint Pretrial Order is filed.

The motion is also premature because discovery is not yet complete. The continuing development of the factual record in this case may well affect the issues to be tried and the presentation of those issues in the Joint Pretrial Order. *See Rosen v. Reckitt & Colman, Inc.,* No. 91 Civ. 1675 (LMM), 1994 WL 652534, at *5, 1994 U.S.Dist. LEXIS 16511, at *14 (S.D.N.Y. Nov. 17, 1994) (bifurcation is inappropriate before substantial completion of discovery). Moreover, both plaintiffs and defendants have indicated their intention to move for summary judgment. The disposition of those motions may alter or narrow the issues that remain to be tried. *See Contini v. Hyundai Motor Co.,* 149 F.R.D. 41, 41

conducive to expedition and economy, may order a separate trial of any claims, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.
Application of Rule 42(b) is within the trial court's discretion. *Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10, 15 (2d Cir. 1988), *cert. denied sub nom. Getty Petroleum Corp. v. Salem Heat and Petroleum Corp.,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

(S.D.N.Y.1993) (motion to bifurcate denied without prejudice as premature where defendant indicated intent to file summary judgment motion).

In any event, plaintiffs' motion to bifurcate does not begin to address the very complexities it raises. Among the questions plaintiffs fail to mention, much less resolve, are what issues will be tried in the first trial, what issues will be left to subsequent trials, and whether there should be individual trials of the claims of individual groups of plaintiffs. *See, e.g., Rosen,* 1994 WL 652534, at *5–7, 1991 U.S.Dist. LEXIS 16511, at *15–*20. Moreover, plaintiffs do not cite any case where a collective ADEA trial was bifurcated. Also overlooked are the procedural and substantive issues raised by the relationship between the class actions under the Human Rights Law and ERISA and the collective action under ADEA.[3]

■ Furthermore, plaintiffs urge that discovery be stayed pending resolution of a trial on liability issues, assuming implicitly that a bifurcation scheme of some kind will be adopted. The possibility that some portion of this case may be bifurcated for trial, or the fact that there may be more than one trial, does not adequately support plaintiffs' request to stay discovery.

To the contrary, staying discovery at this point, given the circumstances of this case, would be both inefficient and unfair. Until now, discovery has not been stayed, severed, or in any way limited to specific issues. The parties should have been proceeding in good faith to complete all discovery by the November 1 deadline—a date selected after the parties fully explained their anticipated need for time. In accordance with this schedule, defendants are entitled to discovery from the class members with respect to damages and liability issues. Plaintiffs do not explain why the Court should interrupt that discovery now. This is not a class consisting of thousands of absent class members, scattered throughout the country, perhaps unaware of the litigation itself. This case involves a

relatively small group of 162 people, each of whom has freely chosen to participate and each of whom has relevant information with respect to the claims and defenses in this action. Having already deposed the named plaintiffs and having obtained the plaintiffs' agreement to depose about 19 other consent signers without objection, defendants properly seek to depose an additional 14 consent signers. These 14 individuals, like all members of the class, could be deposed fully on the issues in this case to the extent information is not otherwise obtained from them, such as through answers to detailed questionnaires. Certainly this approach is more efficient and less onerous than a procedure that defers an entirely new round of unspecified discovery until some indefinite future date. Finally, defendants persuasively argue that they need discovery to be able to participate meaningfully in settlement discussions pending before the Magistrate Judge in this action. *See generally Rosen,* 1994 WL 652534, at *2, 1991 U.S.Dist. LEXIS 16511, at *6.

Therefore, plaintiffs' motion for bifurcation of the liability phase of any trial from the damages phase of any trial is denied without prejudice to renewal at the time the Pretrial Order is submitted. At that time, the parties are free to move for bifurcation or suggest alternative trial management procedures, such as those discussed by Judge McKenna in *Rosen.*

## II.

■ Plaintiffs seek a protective order with respect to certain discovery requests defendants have made on unnamed class members and defendants seek an order compelling such discovery. Specifically, defendants seek responses to interrogatories predominately relating to damages from all members of the class and seek to depose 33 consent signers. Plaintiffs have agreed to 19 of these depositions, including the depositions of consent signers who participated in the evaluation of other consent signers. Thus, only 14 deposi-

---

**3.** In fact, when plaintiffs made this motion, their class certification motions under Rule 23 and § 216(b) were still pending. The Court has now issued an opinion and order certifying collective

and class actions for plaintiffs. *See Krueger v. New York Telephone Co.,* 163 F.R.D. 433 (S.D.N.Y.1995).

tions remain at issue. Defendants maintain that these 14 individuals were evaluated by other consent signers during the September 1992 reduction in force and would have first-hand knowledge about liability issues, such as whether they were treated in a discriminatory manner.

With respect to the interrogatories, plaintiffs contend that damages discovery of individual class plaintiffs is premature and burdensome and ought to be deferred until liability has been determined. Plaintiffs also protest that such discovery is directed at individual rather than class-wide issues and improper at this point in the litigation. Plaintiffs offer instead to provide information on damages from a sample of 40 to 50 class members in order to approximate class-wide damages for purposes of settlement discussions. In response, defendants point out that liability and damages issues have not yet been bifurcated and that the discovery deadline of November 1, 1995 applies to *all* discovery. Defendants also argue they are unable to evaluate or discuss meaningful settlement options without conducting appropriate discovery on the plaintiff class members. Finally, defendants attempt to ease the burden of answering interrogatories by offering as an alternative a 15–page questionnaire to be completed by each plaintiff class member.

Discovery of unnamed class members is neither prohibited nor sanctioned explicitly by Rules 30, 33 and 34. Nevertheless, there is authority for the use of both interrogatories and depositions against members of Rule 23 classes. And, while the defendants argue that more extensive discovery should be permitted in a collective ADEA action where class members have affirmatively opted in, the discovery sought here would be proper in any event under the standards applied in Rule 23 cases. In *Robertson v. Nat'l Basketball Assoc.*, 67 F.R.D. 691 (S.D.N.Y.1975), one of the earliest cases to address the issue, the court examined the tensions at play in a class action brought on behalf of 400 basketball players against the National and American leagues for antitrust violations.

The use of discovery devices against non-representative class members raises the troublesome conflict between the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.

*Id.*, 67 F.R.D. at 699 (quoting Comment, Making the Class Determination in Rule 23(b)(3) Class Actions, 42 Fordham L.Rev. 791, 811 (1974)). After examining the cases, the court held that discovery would be appropriate because "[the class] is composed of fairly finite, readily identifiable members with not insubstantial claims who specifically authorized this litigation and who have financed it since its inception." *Id.* The court then determined that "[b]efore ordering such discovery, a trial court must be assured that the requested information is actually needed in preparation for trial and that discovery devices are not used to take unfair advantage of absent class members." *Id.*, 67 F.R.D at 700 (quoting *Gardner v. Awards Marketing Corp.*, 55 F.R.D. 460, 463 (D.Utah 1972)). The court found the need for liability discovery to be sufficient and permitted defendants discovery on 75 of the 400 plaintiffs. *Id.* Discovery as to individual damages, however, was not appropriate because a bifurcated trial procedure had been adopted. *Id.*

Shortly after *Robertson,* the District Court for the District of Columbia elaborated the standard further.

The most important relevant circumstances are that the party seeking the discovery must demonstrate [*first* ] its need for the discovery for purposes of trial of the issues common to the class, [*second* ] that the discovery not be undertaken with the purpose or effect of harassment of absent class members or of altering the membership of the opposing class, and [*third* ] that the interrogatories be restricted to information directly relevant to the issues to be tried by the Court with respect to the class action aspects of the case.

*United States v. Trucking Employers, Inc.,* 72 F.R.D. 101, 104 (D.C.D.C.1976) (citations omitted). Subsequently, the Second Circuit Court of Appeals cited *Trucking Employers* for the appropriateness of discovery on absent class members. *See Marcera v. Chinlund,* 595 F.2d 1231, 1240 (2d Cir.), *vacated*

on other grounds, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); see Enterprise Wall Paper Mfg. Co. v. Bodman, 85 F.R.D. 325, 327 (S.D.N.Y.1980) (requiring "strong showing" for discovery of absent class members); see also Baldwin & Flynn v. Nat'l Safety Assoc., 149 F.R.D. 598, 600 (N.D.Cal. 1993) (heavy burden for interrogatories, heavier for depositions).

With respect to the 14 depositions of the unnamed Krueger plaintiffs, defendants satisfy the three Trucking Employers factors. Defendants claim that certain absent class members participated in evaluations and appraisals of other class members and that plaintiffs have alleged those evaluations and appraisals formed the basis of discriminatory actions under the procedures and criteria of the defendants' Force Management Plan (the "FMP"). Because plaintiffs assert that defendants manipulated and applied the FMP so as to adversely affect older employees, (see Compl. ¶ 37), the depositions defendants wish to conduct of those individuals subject to the evaluations are addressed to class-wide liability issues, thus satisfying the first factor. The second factor is met because there is no meaningful evidence that defendants are attempting to harass the plaintiff class members. Plaintiffs' counsel is quite capable of assuring there is no harassment or of seeking appropriate protection from the Court if necessary. Finally, the issues of liability on which defendants seek to depose the consent signers is a class-wide issue going to the heart of the plaintiffs' claim—that defendants administered the FMP and its allegedly violative criteria in a way that discriminated impermissibly against older NYT employees. The intended deponents are evaluatees whose observations and experiences are relevant to this issue and therefore properly the subject of defendants' discovery. The third Trucking Employers factor is therefore met. Accordingly, plaintiffs' motion for a protective order against the depositions of these class members is denied.

■ With respect to defendants' desire to serve interrogatories on all 162 class members in the form of a questionnaire, such class-wide discovery on issues of individual damages is entirely appropriate. In Kaas v. Pratt & Whitney, No 89–8343–CIV, 1991 WL 158943, 1991 U.S.Dist. LEXIS 11177 (S.D.Fla. Mar. 18, 1991), the court allowed both interrogatories and depositions of each plaintiff in a 100–member collective ADEA action. The plaintiffs asserted a disparate impact theory based on a company-wide efficiency program called the Activity Value Analysis and a disparate treatment theory supported by anecdotal and statistical evidence. The court ordered that all class members respond to the discovery requested, including interrogatories, document requests and depositions. Id., 1991 WL 158943, at *5, 1991 U.S.Dist. LEXIS 11177, at *15. In Rosen v. Reckitt & Colman Inc., No. 91 Civ. 1675, 1994 WL 652534, 1994 U.S.Dist. LEXIS 16511 (S.D.N.Y. Nov. 17, 1994) (McKenna, J.), defendants sought to depose every member of a 50–plaintiff ADEA class with respect to both liability and damages issues. Plaintiffs urged the court to bifurcate the trial as to liability and damages, and to permit discovery only on a representative sample of the plaintiff class. The court was unpersuaded by the plaintiffs' arguments and permitted defendants to serve document requests on and depose each member of the class. Id., 1994 WL 652534, at *5, 1994 U.S.Dist. LEXIS 16511, at *15. The court found that a representative sample was inappropriate given the relatively small class size. Id., 1994 WL 652534, at *3, 1994 U.S.Dist. LEXIS 16511, at *10. The court also credited defendants' argument that "it cannot conduct meaningful settlement negotiations until it knows its exposure, which will depend in large part on the results of individual depositions, including recent information on the mitigation of damages." Id., 1994 WL 652534, at *2, 1994 U.S.Dist. LEXIS 16511, at *6.

The facts in the present case are similar to Kaas and Rosen. The Krueger plaintiffs bring a collective ADEA action on behalf of 162 consent signers, not significantly more than the 50 in Rosen or the 100 in Kaas. The Krueger plaintiffs assert both disparate impact and disparate treatment theories based on a company-wide plan, analogous to the claims brought in Kaas. The Krueger defendants face difficulty participating in settlement negotiations without a reasonable ba-

sis on which to measure their potential exposure, a factor favoring discovery in *Rosen.* The plaintiffs' statistical expert estimated that a sample of 40 to 50 consent signers would be necessary to calculate a reliable damages estimate. (Madden Aff. dated Aug. 23, 1995, ¶ 2.) Given the relative compactness of the plaintiff class, the defendants should not be required to forego their own discovery as to the extent of their potential liability. *Cf. Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320 (N.D.Ill.1991) (sampling appropriate for class of 3,000 and court ordered production of 2,000 questionnaires from class members submitted in other litigation). No bifurcation of liability and damages issues has been ordered, as was also the case in *Rosen.*

The present case exhibits additional considerations favoring discovery of the absent class members. First, defendants wish only to serve interrogatories and have not indicated a desire to depose the entire class. Second, defendants have attempted to reduce the burden on plaintiffs by providing a 15–page questionnaire designed to elicit appropriate damages information in a convenient and organized manner. Third, there is a discovery cutoff date of November 1, 1995 that applies to all discovery, including individual damages issues. Regardless of whether this trial is ultimately bifurcated in some fashion, both parties must comply with that discovery deadline, and defendants certainly have the right to conduct discovery with respect to individual damages in order to prepare for trial. These three factors and the similarity of this case to *Rosen* and *Kaas* persuade the Court to exercise its discretion in favor of permitting discovery from the absent class members.

The plaintiffs argue that several particular items in the questionnaire are overbroad and burdensome. (*See* Pl.Motion at 11 n. 6.) These interrogatories concern the consent signers' educational background, information about their spouses and dependents, and details of the actual costs and fees paid in this lawsuit. Defendants purport to justify some of these interrogatories on a need to assess each consent signers' motivation to mitigate damages. This rationale does not

support such overbroad and invasive discovery. Accordingly, plaintiffs' motion for a protective order against these particular interrogatories is granted.

### III.

Therefore, plaintiffs' motion to bifurcate the trial of this action is denied without prejudice to renewal. Further, the Court finds it appropriate for defendants to take the depositions of the 14 consent signers whose depositions are sought. The Court also finds it appropriate for defendants to conduct damages discovery on all of the members of the ADEA, HRL and ERISA classes by means of interrogatories and document requests, or alternatively by questionnaire in the form submitted by defendants. The Court therefore grants defendants' motion to compel such discovery, except for the interrogatories which the Court has found overbroad and burdensome. Plaintiffs' motion for a protective order with respect to both the depositions and interrogatories is denied, except with respect to the specific interrogatories as to which the protective order is granted as explained above.

**SO ORDERED.**