Arthur M. SCHWARTZ, Marnette Ritter and Marnie's Crewel Studio on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CELESTIAL SEASONINGS, INC., Painewebber, Inc., Shearson/Lehman Brothers, Inc., Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, and Barnet M. Feinblum, Defendants.

No. Civ.A. 95–K–1045.

United States District Court, D. Colorado.

March 2, 1999.

Gerald L. Bader, Jr., Bader & Associates, P.C., Denver, CO, Dennis J. Johnson, Dennis J. Johnson Law Offices, South Burlington, VT, for plaintiff.

Jeffrey B. Rudman, Peter J. MacDonald, S. Tara Miller, Hale & Dorr, Boston, MA, Lester C. Houtz, Fred H. Bartlit, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, for Celestial Seasonings, Inc., Mo Seigel, Philip B. Livingston, Vestar/Celestial Investment Ltd. partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, Barnet M. Feinblum, and Marnette Ridder.

George B. Curtis, Thomas Marshall Piccone, Mary Scherschel Brady, Judith A. Smith, Gibson, Dunn & Crutcher, Denver, CO, for Paine Webber, Inc. and Shearson Lehman Brothers, Inc.

## MEMORANDUM OPINION AND ORDER ON MOTION AND CROSS–MOTION CONCERNING CLASS NOTICE

KANE, Senior District Judge.

Plaintiffs, a certified class of shareholders in Defendant Celestial Seasonings, Inc.'s stock sue the corporation, along with underwriters and individual members of the corporation for violations of securities laws. Plaintiffs seek damages under §§ 11 and 15 of the Securities Act of 1933, §§ 10(b) and 20 of the Securities Exchange Act of 1934, Rule 10b–5 of the Securities and Exchange Commission Rules, the Colorado Securities Act, and the common law.

Arthur M. Schwartz was the original and only Plaintiff in this action. His pension plan, the "Arthur M. Schwartz, PC, Employees Pension Trust," purchased 500 shares of Celestial Seasonings stock in the IPO. Schwartz was later joined by additional Plaintiffs, Marnette Ritter, and the company of which she is a director, Marnie's Crewel Studio, who together purchased a total of 250 shares of the stock in the secondary market. On March 31, 1998, I certified the class under Federal Rule of Civil Procedure 23(b)(3), and dismissed Marnie's Crewel Studio as a class representative.

Plaintiff class is comprised of an unknown number of purchasers of Celestial Seasonings stock acquired either during the Initial Public Offering ("IPO") on July 12, 1993, or the Secondary Public Offering ("SPO") on January 25, 1994. Pending are Plaintiffs' Motion for Entry of Notice Order, and Defendants' Cross–Motion for Leave to Include Questionnaire With Class Notice. For convenience, I attach a copy of the proposed questionnaire.

### I. *Plaintiff Class' Motion For Entry of Notice Order*

The parties have agreed to the form of notice attached to the Motion for Entry of Notice Order. The only matter in dispute is whether to include Defendants' proposed questionnaire with the notice. I grant Plaintiffs' Motion for Entry of Notice Order with the proviso that Defendants' proposed questionnaire is to accompany the notice.

### II. *Defendants' Cross–Motion for Leave to Include Questionnaire With Class Notice*

Defendants move to include a short questionnaire with the Notice of Pendency of the Class Action, on the grounds that it is necessary for a determination of damages, for discovery regarding Plaintiffs' reliance claims under Colorado law and the common law, and to facilitate settlement. Plaintiffs assert the questionnaire amounts to harassment of the absentee class members, and a thinly veiled attempt to decertify the class or limit it in size. They state that "[i]t is clear if defen-

dants are ever allowed to seek discovery from the class, it can only be after trial, not as a part of a Notice of Pendency." (Pls.' Mem. Opp'n Defs.' Mot. Leave to Include Questionnaire at 5–6). While this may be true in the case of a bifurcated trial, it is not always the case. As discussed below, courts have allowed such questionnaires for limited purposes.

In *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D.Mass.1984), the court allowed discovery of unnamed class members where the questions were relevant to the decision of common questions, the questions were asked in good faith, the discovery method was not unduly burdensome, and the answers were not available from the represented parties. *See also, Brennan v. Midwestern United Life*, 450 F.2d 999, 1005 (7th Cir.1971) (allowing questioning of absentee members where there was no evidence of any party trying to take "undue advantage" of the class members); *Manual For Complex Litigation* § 30.232 at 232 (3rd ed.1995) (*citing Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340–41 n. 24 (7th Cir.1974) (stating that some courts also look at the necessity of members to obtain legal or technical counsel to respond to the questionnaire, which is seen as burdensome to class members)). Similarly, the court in *Transamerican Refining Corp. v. Dravo*, 139 F.R.D. 619, 621 (S.D.Tex.1991) allowed limited discovery of absentee class members if the criteria in *Berenson* were met, and if the questions were clear and concise and not misleading or confusing. Additionally, the *Transamerican* court stipulated that the questions must only relate to the defendants' defenses and the plaintiffs' claims. *Id.*

■■■ Discovery of absentee or unnamed class members is "neither prohibited nor sanctioned explicitly" by the Federal Rules of Civil Procedure. *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 450 (S.D.N.Y.1995). It is within "the court's discretion to utilize this procedure except when it only will confuse the absentees, some class members can demonstrate that it will prejudice their rights, it will be employed prematurely or administered in an inappropriate fashion, or it will serve only to reduce the efficiencies of

the class action." 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1787 at 218–19 (2d ed.1986). The party moving to include the questionnaire has the burden of proving necessity. While some courts require a "strong showing" to discharge this burden, *see, e.g., Enterprise Wall Paper Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); *Krueger*, 163 F.R.D. at 451, others do not and simply decide the issue on the basis of judicial discretion. *See, e.g., In re United States Fin. Sec. Litig.*, 69 F.R.D. 24, 52–54 (S.D.Cal.1975) (allowing the use of a "Proof of Claim" form after examining the particular facts of the suit). I examine the factors to be considered in determining whether to allow discovery of unnamed class members.

### A. Common Questions

■■■ Here, the questions in the proposed questionnaire are common to both sides. They relate to damages issues which must be proved by Plaintiffs at trial, and must be addressed by Defendants to allow them to formulate defenses. In addition, damages issues are relevant to assist both parties to engage in meaningful settlement negotiations. The reliance issues addressed in the questionnaires likewise relate to both Plaintiffs' claims (Colorado and common law), and to Defendants' defenses (rebutting a presumption of reliance in a 10b–5 claim and refuting reliance claims under Colorado law and the common law). Clearly common issues are present.

### B. Good Faith

Notwithstanding Plaintiffs' claims to the contrary, I find no evidence of any bad faith or improper motive of Defendants in proposing the questionnaire.

### C. Undue Burden

The proposed questionnaire is only three pages long and consists of short answers and boxes for the class members to check. The question of whether class members will need to obtain legal or technical help in order to complete the questionnaires is arguable. Defendants insist the questionnaire is simple enough only to require class members to look to tax records in order to complete it. This,

they say, would have to be done at some point during the trial. Plaintiffs argue the questionnaire will require class members to seek advice of stockbrokers or accountants, and possibly attorneys. This, they contend, will amount to an undue burden being placed on class members, which amounts to harassment. I find the questionnaire is succinct and clear. It calls for information that is necessary for a just determination of the case and which should be readily available to any class member.

### D. Access to Information

Defendants contend only the class members themselves have access to the information necessary to the determination of damages issues and reliance of the individual class members. Plaintiffs argue the underwriter Defendants or Hambrecht & Quist (the third lead underwriter in the SPO), also represented by Defendants' counsel, already have access to enough information about the damages issue, but have not supplied it due to Defendants' claims of irrelevancy and privacy. Plaintiffs claim, because Defendant underwriters and/or Hambrecht & Quist sold every share of Celestial Seasoning stock in the SPO, Defendants are already in possession of the necessary damages information.

Plaintiffs' position does not take into account that information regarding the subsequent sales of shares is necessary for a determination of damages, nor the availability of information regarding individual class members' reliance on the allegedly false or misleading statements of Defendants. This reliance information, necessary for a determination of liability for Plaintiffs' Colorado law and common law claims, is not accessible by either party absent some sort of limited discovery. The questionnaire proposed by Defendants, both in relation to damages and reliance, would serve not only to assist Defendants in preparing their defenses, but to allow Plaintiffs better to prepare for their claims at trial, and to facilitate settlement negotiations.

### E. Clear and Concise Questionnaire

The proposed questionnaire is clear and concise, rather than misleading or confusing.

The form consists only of three typewritten pages, requiring the class members to fill out background information about the dates of purchase and (possible) sale of Celestial Seasonings' stock, the capacity in which the class member is a stockholder, and the sources the class member reviewed before purchasing the shares.

### F. Necessity of the Questionnaire

Defendants claim they need the questionnaire to address the issues of class members' reliance on allegedly false or misleading statements and damages, especially to aid in settlement negotiations and to "trace" the buying and selling of individual stocks, in order to calculate damages accurately.

### 1. Reliance

Defendants claim the questionnaire is necessary to help determine the issue of reliance of individual members of the Plaintiff class at trial. *See Korn v. Franchard Corp.*, 50 F.R.D. 57, 59 (S.D.N.Y.1970) (allowing "Proofs of Claim" form to accompany class notice, noting "the procedure may elicit information ... relevant and helpful with respect to reliance)". Reliance or causation is a necessary component of Plaintiffs' claims under Colorado law and the common law. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1102–03 (Colo.1995) (en banc). For Plaintiffs' § 10(b) and 10b–5 claims, reliance must likewise be proved, but, for § 10(b) claims brought under the "fraud on the market" theory, an investor's reliance on publicly available information is presumed. *Basic Inc. v. Levinson*, 485 U.S. 224, 241–45, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). There is no recognized "fraud on the market" theory in Colorado, so reliance or causation must be proved. *Rosenthal*, 908 P.2d at 1104. Reliance is conclusively presumed for § 11 claims when the securities are purchased within twelve months of the "effective date of the registration statement." Thomas L. Hazen, *The Law of Securities Regulation* § 7.3, at 288–90 (2d ed.1990). Thus, while Plaintiffs do not need to prove reliance for purposes of either the § 11 or the § 10(b) claims, they must prove reliance to succeed

in their Colorado law and common law claims.

■ Additionally, Defendants may be able to use absence of reliance as a defense to Plaintiff's § 10(b) claims. Although reliance is presumed under the "fraud on the market theory," that presumption is rebuttable if Defendants can prove that individual class members did not rely on any fraudulent misrepresentations or omissions. *See Finkel v. Docutel/Olivetti Corp.,* 817 F.2d 356, 364–65 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). When available, questionnaires may be used to ascertain information regarding both Plaintiffs' claims and Defendants' defenses. *Transamerican,* 139 F.R.D. at 621.

### 2. *Damages*

Defendants assert the proposed questionnaire is necessary for a computation of damages at trial, as well as for fruitful settlement discussions. Plaintiffs claim damages questions can be resolved without resort to harassment of absentee class members. *See Stoller v. Baldwin–United Corp.,* Fed.Sec. L.Rep. (CCH) ¶ 92,298 at 92,027 (S.D.Ohio 1985) (explaining how damages can be calculated without resort to discovery of class members); Miller Affidavit, ¶ 4 (same). *But see In re Oracle Sec. Litig.,* 829 F.Supp. 1176, 1181 (N.D.Cal.1993) (listing problems with human error in calculating damages without exact numbers)

■ Damages under § 11 are calculated as:

> the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the

> value thereof as of the time such suit was brought....

15 U.S.C. § 77k(e) (1997). Under this section, if a plaintiff did not suffer a loss due to the alleged misstatements or omissions of defendants, that plaintiff is not entitled to any statutory recovery under § 11. *PPM Am., Inc. v. Marriott Corp.,* 853 F.Supp. 860, 876 (D.Md.1994). Because of this, a preliminary assessment of individual Plaintiffs' damages would aid in calculating the entire class' damages, particularly for use in settlement negotiations.

Defendants also allege they need the questionnaire in order to "trace" the purchases and sales of securities sold during both the IPO and the SPO. Such a questionnaire allows the parties to pinpoint the exact dates of transactions, thus facilitating the calculation of damages. Plaintiffs contend such tracing is unnecessary because damages can be calculated using mathematical formulas. *See* Miller Affidavit, ¶¶ 4–11.

■ Where trials of this sort are bifurcated, generally "proofs of claim" like the present questionnaire are not required until after the liability portion of the trial. *See Krueger,* 163 F.R.D. at 450 (stating pre-trial discovery of class members regarding damages is inappropriate where there is a bifurcated trial). Though this may be one mode, it is by no means the only manner of proceeding with limited discovery of absentee class members. Though a comparable method may exist, as urged by Plaintiffs, because of the necessity for the questionnaire for the issue of reliance, and because the actual numbers will be preferable to a qualified guess, I order that the questionnaire include questions pertaining to the tracing of damages.

### G. *Rule 23 as a Bar to Questionnaire*

■ In a class action, the court may, in its discretion, " make appropriate orders ... that notice be given ... of the opportunity of members to intervene and present claims or defenses, or otherwise to come into the action." Fed.R.Civ.P. 23(d). While many courts have held that requiring Rule 23(b)(3) class members to "opt-in" is a strict violation of the Federal Rules, Rule 23(d) gives the

court leeway to require limited discovery of 23(b)(3) class members when such discovery is not grounds for exclusion from the class. *See* 7B Wright, *supra* § 1787 at 216–17 (*citing Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 392 (3rd Cir.1981); *Korn*, 50 F.R.D. at 60).

This court has allowed similar questionnaires in certain cases. *See, In re Storage Tech. Corp. Sec. Litig.*, No. 84–M–1981, slip op. at 5 (D.Colo. May 24, 1988) (holding it appropriate, for the purposes of developing an analysis of the potential damages at issue, to include some request for information or "an appropriately designed questionnaire which could be made part of the notice itself."); *Frederick L. Raymond v. Mobile Oil Corp.*, No. 88–Z–2112, slip op. at 2–3 (D.Colo. Apr. 30, 1993) (granting defendant's Motion for Permission to Serve Questionnaire, in part, noting that "[s]uch discovery must be limited, with specific reference to issues before the court."); and *In re Storage Tech. Corp. Sec. Litig.*, No. 92–K–750, slip op. at 2–3 (D.Colo. May 16, 1994) (allowing defendants to include a damage questionnaire with class notice, but disallowing language barring those who fail to respond from sharing in recovery).

Plaintiffs argue, because individual class members are not considered "parties," they should be excluded from discovery of any sort. *See Wainwright v. Kraftco*, 54 F.R.D. 532, 534 (N.D.Ga.1972). While it is true that class members are not considered parties for purposes of traditional discovery measures, courts have allowed limited discovery of class members in the form of questionnaires.

### III. *Proposed Limitations on the Questionnaire*

#### A. *Not mandatory*

■ Because an "opt in" procedure for 23(b)(3) class actions is clearly illegal and runs contrary to the purpose of such a class action, the questionnaire must not result in the exclusion of any party member that does not return the questionnaire. *See B & B Inv. Club v. Kleinert's, Inc.*, 62 F.R.D. 140, 147 n. 5 & 148 (E.D.Pa.1974) (disallowing questionnaire with sanctions for non-compliance, noting if there were no sanction for non-compliance, it would be a "substantially

different question."); *Korn*, 50 F.R.D. at 60 (stating that failure to reply to questionnaire must not exclude a class member from the class); *In re Storage Tech. Corp. Sec. Litig.*, No. 92–K–750, slip op. at 3 (D.Colo. May 16, 1994) (noting mandatory completion of questionnaire effectively cancels out the opt-out provisions of class notice and imposes an opt-in requirement). The questionnaire, as proposed by Defendants, reads: "The distribution of this Questionnaire has been ordered by the Court in this class action law suit. If you bought Celestial Seasonings stock between February 12, 1993 and May 18, 1994, and have not requested exclusion from the class, *then you must* answer the questions below." Defs.' Mem.Supp. Leave to Include Questionnaire, App. A (emphasis added). In order to avoid confusion, I order the last sentence of the above language changed to "... not requested exclusion from the class, *please* answer the questions below." This new language, while a minor adjustment, eliminates the impression of a mandatory questionnaire, but still encourages the class members to answer the questions posed.

Likewise, I order deleted the sentence on the third page of the questionnaire that reads "THE WILLFUL SUBMISSION OF A FALSE CLAIM IS A CRIMINAL OFFENSE." While this language does not directly assert that the questionnaire is mandatory, it does imply that it is required to be filled out. The language just above the sentence already requires that the class member, before signing the questionnaire, must have "read the foregoing, know the contents thereof, and hereby certify both the truth of the information contained herein and that [the signatory] signed it as a free act." This is adequate to provide for truthful answers without creating an impression of a mandatory questionnaire.

#### B. *Costs*

■ Some courts have held that the costs of a questionnaire must be borne by the party seeking to serve the questions. Defendants here seek to have Plaintiffs include the proposed questionnaire along with the Notice

of Pendency of Class Action. This would result in Plaintiffs incurring the entire cost of printing and mailing the blank questionnaires, and of obtaining a post office box and sorting through the answered forms. Because the cost of such could be burdensome to Plaintiffs, I order the cost be shared by the opposing parties, as the questionnaire aids in discovery for both sides. *See Biben v. Card*, 789 F.Supp. 1001, 1006 (W.D.Mo.1992) (requiring defendant and plaintiff to split the cost of questionnaire because both parties needed the information); *Krueger*, 163 F.R.D. at 452 (requiring the defendants to produce the questionnaire in order to ease burden on plaintiffs); *Enterprise*, 85 F.R.D. at 328 (requiring defendants to pay the cost of envelopes, as well as private accounting of the results, if desired).

## C. *Other Sources*

Lastly, I order that, on pages three and four of the questionnaire, under the heading "Information Reviewed Before Purchase," a space be added for "Other Sources, Please Name." (*See* Pls.' Mem. Opp'n Defs.' Mot. Leave to Include Questionnaire at 5–6). This will allow class members to refer to such items as newspaper articles, press releases and discussions with brokers in response to this section.

## IV. *Conclusion*

I grant Plaintiff Class' Motion for Entry of Notice Order and Defendants' Cross–Motion for Leave to Include Questionnaire With Class Notice, subject to the inclusion of a questionnaire consistent with this order. I order that the costs of the questionnaire be borne equally by both sides.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-K-1045

ARTHUR M. SCHWARTZ, on behalf of himself and all others similarly situated,

 Plaintiff,

v.

CELESTIAL SEASONINGS, INC., PAINEWEBBER, INC., SHEARSON/LEHMAN BROTHERS INC., MO SIEGEL, RONALD V. DAVIS, PHILIP B. LIVINGSTON, VESTAR/CELESTIAL INVESTMENT LIMITED PARTNERSHIP, JOHN D. HOWARD, JAMES P. KELLEY, ARTHUR J. NAGLE, DANIEL S. O'CONNELL, ROBERT L. ROSNER, and BARNET M. FEINBLUM,

 Defendants.

# QUESTIONNAIRE

*The distribution of this Questionnaire has been ordered by the Court in this class action law suit. If you bought Celestial Seasonings stock between February 12, 1993 and May 18, 1994, and have not requested exclusion from the class, then you must answer the questions below.*

## 1. Identification of Class Member

Name: _____

Address: _____

_____

Home Telephone No.: _____ Work Telephone No.: _____

Please place an "X" next to the capacity you in which you held Celestial Seasonings stock:

☐ Individual ☐ Joint ☐ Corporate ☐ Partnership ☐ Decedent's Estate

☐ Custodial ☐ Nominee, Agent or Attorney ☐ Guardian ☐ Trustee

If you did not own Celestial Seasonings stock in your own interest, please provide the name and address of the person or entity on whose behalf you held the stock:

Name: _____

Address: _____

Please place an "X" in the appropriate box and fill in the applicable blanks:

☐ At any time between February 12, 1993 and May 18, 1994, I was the record and beneficial owner of Celestial Seasonings stock, registered in my name.

☐ At any time between February 12, 1993 and May 18, 1994, I was the beneficial but not the record owner of Celestial Seasonings stock registered in the name of _____, whose address is _____.

### 2. Purchase and Sale Information

In this section, you must provide the specific trading information requested for your purchases and sales (if any) of Celestial Stock. The price information should not include any commissions, broker fees or other expenses connected to the transactions.

*I made the following purchases of Celestial Seasonings Stock from July 12, 1993 to May 18, 1994:*

| Purchase Date | Name of Broker | Number of Shares | Price per Share | Total Purchase Price |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*I made the following sales of Celestial Seasonings Stock at any time from July 12, 1993 to the present:*

| Sale Date | Name of Broker | Number of Shares | Price per Share | Total Sales Price |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*(If you need more space, please complete this section on a separate piece of paper, staple it to this questionnaire and check here ☐)*

### 3. Information Reviewed Before Purchase

*Please place an "X" if you read or reviewed any of the following materials prior to purchasing Celestial Seasonings stock:*

☐ Prospectus for the Celestial Seasonings Initial Public Offering

☐ Prospectus for the Celestial Seasonings Secondary Public Offering

☐ Celestial Seasonings 1993 Form 10K

☐ Celestial Seasonings 1993 Report to Stockholders

☐ Celestial Seasonings Form 10Q for the fourth quarter of fiscal 1993

☐ Celestial Seasonings Form 10Q for the second quarter of fiscal 1994

☐ Celestial Seasonings Form 10Q for the third quarter of fiscal 1994

☐ Celestial Seasonings 1994 Form 10K

☐ Celestial Seasonings 1993 Report to Stockholders

☐ Reports by any analysts on Celestial Seasonings Stock.

*If yes, please identify which reports you read or reviewed below:*

_____

_____

_____

## 4. Certification

**I have carefully read the foregoing, know the contents thereof, and hereby certify both the truth of the information contained herein and that I signed it as a free act.**

**THE WILLFUL SUBMISSION OF A FALSE CLAIM IS A CRIMINAL OFFENSE.**

_____

(Signature)

_____

(Joint Owner's signature)

Dated: _____

*Please return the completed Questionnaire by _____, __ 1998 in the enclosed, pre-piad envelope to:* Celestial Seasonings Class Action, Valley Forge Adminstrative Services, P.O. Box 220, Villanova, PA 19085-0220.